## BELL v. DAVIS *et al.*

Opinion Filed January 25, 1916.

(155 Pac. 1132.)

1. **WILLS—Probate—Issues.** The only issue triable upon objections to the probate of a will is the **factum** of the will or the question of **devisavit vel non.** In other words, the inquiry is confined to whether the paper presented is, in fact, the last will and testament of a person legally competent to make a will; whether it was executed and attested with the formalities required by law; whether the testator was of sound and disposing mind; whether the execution was free from undue influence, duress, menace or fraud; if so, it is a will, and should be admitted to probate.

(a) In such proceeding the court is without power to construe the will or determine the question of the legality of the disposition of particular items devised.

2. **WILLS—Contest—Validity of Execution—Examination of Will.** While in a contest over the probate of a will its construction is not before the court, and cannot be determined, yet the court can examine the contents of the will as an incident, where it would aid in determining the validity of its execution.

3. **SAME—Attestation—Validity.** It is not an insurmountable objection to the due execution and attestation of a will that the testamentary character of the instrument was declared, and the witnesses were asked to witness, through the medium of an interpreter, translating between the testator and the witnesses.

(a) The execution in such a manner will, however, be carefully scrutinized, and the court must be clearly convinced from the evidence that the testator was fully and accurately advised as to the contents of the will, and that it sets forth his testamentary intentions by disposing of his property as he desired.

4. **SAME—Execution — Formalities — Full-Blood Indians — "Children."** The provisions of section 23 of the act of Congress approved April 26, 1906 (34 Stat. at L. p. 137, c. 1876), that no will of a full-blood Indian devising real estate shall be valid, if such will "disinherits the parent, wife, spouse or children of such full blood," unless same is executed with certain named formalities, do not embrace within their terms or contemplate grandchildren and great-grandchildren. Therefore, if a full-blood Indian leaves surviving no parent, wife, spouse, or children, but leaves grandchildren and relations further removed, his will,

otherwise sufficient as to execution, does not have to be acknowledged before and appoved by a judge or a commissioner of the United States Court, or the judge of a county court of the State of Oklahoma.

(Syllabus by Brewer, C.)

*Error from District Court, Tulsa County;*
*L. M. Poe, Judge.*

Proceedings by Albert H. Bell, administrator, for the probate of the will of Tuckabachee, a full-blood Creek Indian, contested by Ethel Davis and others. From a judgment of the district court denying probate on appeal from an order of the county court admitting the will to probate, the administrator brings error. Reversed, with directions.

[Note.—This case, in so far as it is held no insurmountable objection to the due execution and attestation of a will that the testamentary character of the instrument was declared, and the witnesses were requested to witness same, through the medium of an interpreter, has been overruled by *Hill et al. v. Davis et al.,* not yet officially reported (167 Pac. 465).—Reporter.]

*C. W. Grimes* and *Davidson & Williams,* for plaintiff in error.

*Biddison & Campbell* and *W. J. Gregg,* for defendants in error.

Opinion by BREWER, C. This is a proceeding in error to review the action of the district court of Tulsa county denying the probate of a paper purporting to be the will of Tuckabachee, a full-blood Creek Indian; the case being in the district court on appeal from an order of the county court admitting the will to probate.

The will was drawn with care, and, so far as it shows upon its face, appears to have been executed in the man-

ner and with all the formality required by statute. It has at the end the signature of the testator, and appears on its face to have been properly attested and witnessed. It disposes of three different kinds of landed estates, viz., the homestead and surplus allotments of the testator, and other lands which the testator had taken as the heir of a deceased son. It also disposed of considerable personal property. The contest arose over the execution of the will, and the claim of faulty execution is based upon the fact that the testator did not speak the English language, and that one of the witnesses who spoke the English language did not speak Creek, the language of testator, but that said witness who did not speak Creek was asked to witness the will, and heard the testator declare it to be his will, through the medium of an interpreter, who understood both languages, and who also signed the will as a witness.

We find from the record that Tuckabachee, the testator, a full-blood Creek Indian about 95 years of age, who spoke the Creek language, but who did not speak English, called to his assistance one Dave M. Beaver, a friend, who spoke both languages, advised him that he wanted to make a will disposing of his property, and procured the said Beaver to telephone to Mr. Grimes, an attorney of Tulsa with whom the testator was acquainted, to come out to his house and prepare the will; that on the day following Mr. Grimes, together with a Mr. Kramer and Mr. Smith, went out to Tuckabachee's house, where they found him sick, but in the full possession of his mental faculties; they also found Dave Beaver, who acted as an interpreter for testator, and who translated to the attorney the testator's desires, minutely and particularly, as to the disposition of the various proper-

ties; that the attorney prepared the will at the testator's bedside from this interpretation; that as it was being prepared, and after its preparation, each item of devise and all the terms and particulars of the will were correctly translated and interpreted to testator, who expressed his satisfaction with the same, and who asked the interpreter, Dave M. Beaver, to subscribe his name to the document as his will and testament, which was done; that he also requested, through the interpreter, that Kramer and Grimes and the interpreter attest and witness the execution of his will, which was done; and that after the execution of the will testator, through the interpreter, handed the will to Mr. Grimes for safekeeping until the occasion should arise for its use. The facts further show that testator at the time of the execution of the will had neither wife nor children living to survive him. There is probably no positive proof that he did not have at the time a living parent, but, as it is so improbable that a man 95 years of age would have, and as no one has ventured to claim that he did have, we shall assume that he had no living parents.

The court found, and the evidence abundantly supports the finding, that testator at the time of making the will "was of sound and disposing mind and memory, and knew what property he had and knew what disposition he wanted to make of it." The sole reason for refusing the probate of the will will be found in the language of the court:

"But the court finds that the said Tuckabachee did not declare to the witnesses John T. Kramer and Charles W. Grimes, or to either of them, that said document was his last will and testament, nor did he request them to sign same as witnesses, and that the only person to whom

he so declared said document to be his last will and testament, and whom he requested to sign same, was the said David Beaver, and there was, in fact, but one attesting witness to said will, and that said will was not made, executed, and attested according to law."

In other words, that it was not sufficient for the testator to declare to said witnesses that the document was his last will and testament, and to request them to sign same as witnesses, through the medium of an interpreter. There is no point made here of any fraud or misrepresentation in the interpretation of the will, or as to other matters in connection with its execution, or that the interpreter did not faithfully and fully translate the matters, or that the will does not represent the desires of testator and the dispositions he wished to make of his property. The case stands on the bald question of the sufficiency of its execution.

Inasmuch as one of the defendant in error's counsel, in an attempt to justify the action of the court in refusing probate of the will, argues at length questions affecting merely its construction, or the legality of certain of the devises therein contained, matters which were not properly in issue below, and which, we may add, had no place in the issues, we feel that it is not inappropriate again to call attention to just what questions may be raised in opposing the probate of a will.

In *Taylor v. Hilton*, 23 Okla. 354, 100 Pac. 537, 18 Ann. Cas. 385, it was pointed out:

That "the only issue [triable] was the *factum* of the will or the question of *devisavit vel non*," and, further, "where on a trial of such issue without a jury the court finds the testamentary paper produced to be the last will of the testatrix, it is error to reject from probate any part thereof."

In *Nesbit v. Gragg,* 36 Okla. 703, 129 Pac. 705, the above rule was again announced, and a judgment of the district court admitting on appeal a will to probate was reformed, striking from the judgment parts thereof which undertook to construe the will and to determine the legality of certain devises made therein. These cases, however, arose under the law of Arkansas in force in Indian Territory prior to the erection of the state; but from an examination of the authorities cited in support of *Taylor v. Hilton, supra,* the first case on the subject, it will be found that the opinion rested upon the general state of judicial decisions in many states, and it was not so held merely because the Supreme Court of Arkansas had so construed the statute. But later, the case of *In re Allen's Will,* 44 Okla. 392, 144 Pac. 1055, was decided by this court, in which the same rule was announced as being the proper practice and the proper construction of the statutes of Oklahoma relating to the probate of wills. In the latter case a number of authorities are cited from different states, and especially from the State of South Dakota, from whence our statute came. As was pointed out in the Allen Case, *supra,* our statute relating to the probate of wills (sections 6201 and 6210, Rev. Laws 1910) came here directly, by importation, from Dakota, and Dakota, in turn, as we now recall, took the same statute from California.

In *Irwin et al. v. Lattin,* 29 S. D. 1, 135 N. W. 759, Ann. Cas. 1914C, 1044, it was held that the only matters to be adjudicated were that the will was duly executed and attested, and was not procured by fraud, that the testator had sufficient mental capacity to make the will, and had authority to dispose of his property by will, and that the attesting witnesses, where required, were competent and credible, and that the evidence of these things

was sufficient to sustain the probate. That case cites numerous cases from different states holding to the same doctrine.

In the case of *Estate of Cobb*, 49 Cal. 599, it was held:

"If an instrument is offered for probate as a will which is testamentary in its character, questions concerning the construction to be placed upon it cannot be raised for the purpose of preventing it from being admitted to probate. Such questions cannot be considered until after it is probated."

In a later California case, *Estate of Murphy*, 104 Cal. 554. 38 Pac. 543. it is said:

"It may be conceded for the purpose of the case at bar that under peculiar circumstances a court, in determining whether a certain instrument is entitled to probate, may look somewhat into the body of the instrument; but this exercise of the power of construing is admissible only as necessarily incidental to the determination of the question: Will. or no will?"

Therefore we shall not consider here whether or not some of the items devised in this will may fail for want of power in the testator to dispose of them by will; for that question will doubtless arise in some appropriate proceeding challenging the legality of such devises. We cite from this court on Indian wills, but not as in point, the following: *In re Impunnubbee's Estate*, 49 Okla. 161, 152 Pac. 346; *Wilson. v. Greer*, 50 Okla. 387, 151 Pac. 629; *In re Blackfeather's Estate*, 54 Okla. 1, 153 Pac. 839.

It will be recalled that this will undertakes to dispose of allotted lands held by testator under three different kinds of tenure, as well as of considerable personal.

property. Therefore, before. approaching the question of the validity of the execution of this will, we shall pause long enough to inquire if a full-blood Indian was possessed, under the law, of the power to make a will. We find that he was, and the authority may be found in section 23 of the act of April 26, 1906 (34 Stat. at L. 137), as kept alive and in force by sections 8 and 9 of the act of May 27, 1908 (35 Stat. at L. 312) and as held in *Re Allen's Will, supra.*

The testator having, then, legal capacity to make a will, and the court having found that he had mental capacity to make the will in question, there being no fraud, duress, or undue influence alleged or proven, it only remains to determine whether or not this will was sufficiently executed to require its probate by the court. This question, reduced to its narrowest form, is: Can a will be made through the medium of an interpreter? Counsel for both sides admit their surprise at finding such a dearth of authorities upon a question which might have been expected to arise often. Defendants in error cite a few cases which they claim to be somewhat in point. Plaintiff in error has not been able to add to that list on the precise point in issue, but contents himself with claiming that a majority of those cases cited are not in point, and that the one that is in point is in his favor and against the defendants in error. We have looked into the question with considerable care, and believe that counsel have found about all there was to find. The case of *Hebert's Heirs v. Hebert's Legatees,* 11 La. 361 (reprint, vol. 6, p. 227), we have been unable to examine, as it is not in our library; but it is made the basis of the decision in the case of *Potts v. House,* 6 Ga. 324, 50 Am.

Dec. 329, which last case we shall consider presently at some length.

The case of *Gonzales v. Gonzales,* 13 La. 104 (reprint, p. 69), comes nearer sustaining defendants in error's contention than any other case they have cited. In that case, however, which arose under the old civil law there in force, the objection to the probate of the will was that:

"The last will and testament of the deceased, under which the defendant claims, is null and void, because it was not written as dictated by the testator."

Practically the whole opinion is found to be in the following language:

"The will was made on the 31st of July, 1835. The principal objection to its validity, and the only one we are called upon to notice, is that it was written in the English language, of which the testator was absolutely ignorant. It appears that Spanish was his native language,  *  *  *  in which the instrument signed by him as his will was written; that he dictated the contents of the will in Spanish, and the notary who wrote the will made a translation in writing in the French language of what had been dictated, which he read to the testator, who approved it as expressing his intentions. The instrument was then written in the English language, and signed by the testator, the notary, and witnesses after the requisite formalities. Conceding that the will is valid in every other respect, we consider that the objection taken by the heirs at law is fatal. The article 1571 of the Louisiana Code requires that the testament should be dictated by the testator and written by the notary as dictated. The instrument under consideration has passed through the process of a double translation, and cannot, in the sense of the Code, be said to have been written as dictated by the testator."

As has been observed from the reading, there was a positive command of the Code in that state "that the testament should be dictated by the testator and written by the notary as dictated." That law, the French or civil law, as adopted there, required that the witnesses not only understand that it was testator's will, but that they have full knowledge of the contents, devises, and dispositions contained in it, and, under that law, every act and requirement in and for the execution of the will was sacramental, and had to be rigidly complied with. No such requirements obtain in this state.

The case of *Adams v. Norris*, 26 How. 353, 16 L. Ed. 539, does not seem to us to be in point. We have read the case carefully, and do not think it lightens the situation here. The will under consideration there was controlled by the Spanish-Mexican law, and it was finally held that, although that law required three witnesses, and there were only two, yet, upon proof of long-continued custom in California of the people, with the acquiescence of the courts, of only requiring two witnesses, the will might be probated.

One or two other cases defendants in error have mentioned do not appear to be of very much assistance. They also, however, quote at length from *Potts v. House, supra*, which was a case arising during slavery times, and one in which the interpreter that afforded the medium of communication between the testator and the witness was a slave, who, under the law of Georgia, could not be sworn or give testimony in a court of justice. In that case Justice Lumpkin has gone into the matter at considerable length, and in fact adverts in the opinion to most of the authorities relied upon here as against the

execution of the will.  But, notwithstanding such authori-
ties, he deduces from them and his own reasoning the
following:

"We hold, therefore, that if a negro interpreter, in-
capable by law of being sworn, is the only channel of
communication between the testator and writer of the
will, and there be no other evidence of the testator's
knowledge of its contents or his assent thereto than that
which is derived through this medium, the will cannot
be executed.  But, if the will be written in the presence
of the testator, and in a language which he understands,
it is read over to him, and his dictation and approval of
the instrument are interpreted by a negro in his hearing,
and in the hearing of others interested in its contents,
and he signifies no dissent thereto, by signs or otherwise,
but, on the contrary, is understood to express himself
satisfied, the will may be established, especially if it ap-
pears to have been made in conformity to the previously
declared intentions of the testator as to the disposition
of his property."

We do not think this case, and it is the only one
which really throws much light on the situation before
us. can be said to be authority against the validity of the
execution of the will in the instant case.  On the other
hand, we think that it is an authority to sustain the
execution.  It will be observed that Justice Lumpkin is
careful to say that, when the interpreter is incapable by
law of being sworn, and "is the only channel of communi-
cation," etc., this would not afford a medium through
which the testamentary intentions could be shown.  Evi-
dently for the very good reason that such an interpreter
could not give evidence, could not be heard by the court,
and, being thus incompetent as a witness, the evidence
which should be produced had a necessary link missing.
No such condition is presented here.  That the interpreter

was a competent witness, was before the court, and gave every evidence of the intelligence and the capacity needed to translate from the one language to the other, and that he did so in good faith, and fully represented the intentions of the testator, and that such testamentary intentions were written in the will, and that the testator understood them, is not challenged.

In the case of *In re Arneson's Will*, 128 Wis. 112, 107 N. W. 21, the court holds:

"Where a will written in the English language, which testator did not understand, was translated to him in a language he did understand before he executed it, it was not objectionable because it was not written in testator's language."

And in the opinion the court says:

"It is urged that the will cannot be valid, couched as it was in the English language, which the testator did not understand. Out of some contrariety of authority this court has decided that such fact is not an insuperable obstacle to the validity of a testament. *Will of Walter*, 64 Wis. 487, 25 N. W. 538, 54 Am. Rep. 640. Of course, in such a case it should appear clearly that the testator was otherwise accurately informed of the contents and meaning of the instrument in a language which he did understand, but, that being established, as we consider to be the case here, there is no more doubt of his purpose and intention in executing it than if his knowledge of the contents were derived from reading or hearing read a document written in a language which he did understand. How, otherwise, could parties who understood no common language become mutually bound to any written contract?"

On the general question of the use of an interpreter to convey from one person to another an intention, al-

though not on the exact point, the case of *Commonwealth v. Vose,* 157 Mass. 393, 32 N. E. 355, 17 L. R. A. 813, may be referred to; and from that case we excerpt the following:

"When two persons who speak different languages and who cannot understand each other converse through an interpreter, they adopt a mode of communication in which they assume that the interpreter is trustworthy, and which makes his language presumptively their own. Each acts upon the theory that the interpretation is correct. Each impliedly agrees that his language may be received through the interpreter. If nothing appears to show that their respective relations to the interpreter differ, they may be said to constitute him their joint agent to do for both that in which they have a joint interest. They wish to communicate with each other, they choose a mode of communication, they enter into conversation, and the words of the interpreter, which are their necessary medium of communication, are adopted by both, and made a part of their conversation as much as those which fall from their own lips. They cannot complain if the language of the interpreter is taken as their own by any one who is interested in the conversation. Interpretation under such circumstances is *prima facie* to be deemed correct. How far either would be bound by it if the interpreter should prove false may depend on a variety of circumstances which it is unnecessary in this case to consider. In a case like the present we are of opinion that either party, or a third person who hears the conversation, may testify to it as he understands it, although for his understanding of what was said by one of the parties he is dependent on the interpretation which was a part of the conversation. The fact that a conversation was had through an interpreter affects the weight, but not the competency, of the evidence. *Camerlin v. Palmer Co.,* 10 Allen (Mass.) 539; 1 Greenl. Ev., sec. 183."

Other authorities not cited as being in point here, but as having a tendency to bear on the matter, are *State v. Kent,* 4 N. D. 577, 62 N. W. 631, 27 L. R. A. 686; *Terrapin v. Barker,* 36 Okla. 93, 109 Pac. 931; *Kelly v. Ning Yung Benev. Ass'n,* 2 Cal. App. 460, 84 Pac. 321; Wigmore on Ev. vol. 1, sec. 668 *et seq.*

2. Still another point made in one of the briefs as a reason for denying the probate of the will is that its execution was insufficient because it was not acknowledged before a judge of a United States Court, or a United States Commissioner, or a judge of a county court of the State of Oklahoma. This point depends upon whether or not deceased, a full-blood Indian, left surviving him parents, wife, or children, and disinherited some or all of them; and a consideration of the point does not involve a construction of the will, further than as an incident, and to the extent of determining the validity of its execution.

The act of April 26, 1906 (34 Stat. at L. p. 137), provides in section 23, as has herein been noticed, the authority for a full-blood Indian making a will devising real estate; but in that section it is provided that no will of such a testator shall be valid if it "disinherits the parent, wife, suopse, or children of such full-blood Indian, unless acknowledged before and approved by a judge of the United States Court for the Indian Territory, or a United States Commissioner."

In section 8 of the act of May 27, 1908 (35 Stat. at L. p. 312), the foregoing section 23 is amended by adding at the end thereof the words "or a judge of a county court of the State of Oklahoma." In section 9 of the last-described act, it is further provided:

"That the provisions of section 23 of the act of April 26, 1906, as amended by this act, are hereby made applicable to all wills executed under this section."

Therefore it follows that in the execution of a will of a full-blood Indian said additional formalities and safeguards are required, if the will disinherits the father, wife, spouse, or children. This will, having been executed since the passage of the act of May 27, 1908, *supra*, if it does disinherit such persons, is insufficient in its execution, as it was not acknowledged before and approved by a judge of a county court of Oklahoma. *Homer et al v. McCurtain*, 40 Okla. 406, 138 Pac. 807. However, it is not claimed that this testator left surviving him this class of relations, unless the law can be so enlarged and then read as to include grandchildren and great-grandchildren. We do not think the law can be so enlarged and so read. This testator had both grandchildren and great-grandchildren, and in the will in question they received the bulk of his estate. A question might arise as to whether they were disinherited under the meaning of the act, even if they came within the meaning of its terms; but this we are not called upon to decide. We think, under the decisions of this court, that where the word "children" is used, it does not extend to and include grandchildren and great-grandchildren, unless there is something in the act by which the intention to so extend the meaning would be necessarily inferred.

In the case of *Falter v. Walker et al.*, 47 Okla. 527, 149 Pac. 1111, it is held:

" 'Children,' with respect to parentage, means sons and daughters, of whatever age, and the term is never held to include grandchildren or more remote descend-

ants, unless a strong case of intention or necessary implication requires it."

And further:

"The term 'children of any deceased brother or sister,' as used in the third subdivision of section 8418, Rev. Laws 1910, has reference to the sons and daughters of such brother or sister, and does not include grandsons and granddaughters or other more remote descendants."

In the case of *Lowrey v. Le Flore*, 48 Okla. 285, 149 Pac. 1112, the same holding is made. It is stated in said case:

"The word 'children,' as used in subdivision 3 of section 8418, Rev. St. 1910, which provides that, if there be no issue, nor husband, nor wife, nor father, nor mother, the estate of an intestate descends in equal shares to the brothers and sisters of the decedent, and to the children of any deceased brother or sister, by right of representation, does not include grandchildren of a deceased brother or sister of the intestate."

We therefore hold that it was not necessary to acknowledge before and have the approval of the county court as a part of the execution of the will; and upon the whole case we conclude: That this will has been proved by competent witnesses to express the wish of the testator as to the disposition of his estate, that it has been executed in compliance with the law, and that sufficient competent proof of its execution and of its testamentary character to require its probate, was before the district court, and that it was error upon the part of the court to refuse probate thereof.

This requires a reversal of the case, with directions that the district court make scuh orders as are necessary and proper to effect the probate of the will.

By the Court: It is so ordered.