**HILL et al. v. DAVIS et al.**

**COBB et al. v. SAME** (two cases).

Nos. 7618, 7746, 7747—Opinion Filed July 10, 1917.

Rehearing Denied Sept. 18, 1917.

(167 Pac. 465.)

(Syllabus by the Court.)

**1. Wills—Execution—Attestation.**

On proceedings to probate a nonholographic will, it appeared that the decedent could speak and understand only the Creek language. Two of the three witnesses who purported to attest the execution thereof could not speak and understand that language, but only the English language; one of the witnesses could speak and understand both languages. The declaration that the instrument was her will and the request that the witnesses sign their names thereto as such were made by the decedent in the Creek language, which was understood by one of the witnesses, but not by the others. The declaration and request were interpreted and repeated in English by the one witness to the other two, but the decedent could not understand the same. Held, the declaration that the instrument was her will and the request that the witnesses sign the same were made by the decedent to only one attesting witness, and probate thereof was properly denied; the statute requiring that there be two attesting witnesses to whom the declaration and request must be made—overruling Bell, Adm'r, v. Davis, 55 Okla. 121, 155 Pac. 1132.

**2. Wills—Competency—Guardianship.**

One who has been adjudged mentally incompetent to manage his property, and whose estate is managed by a guardian duly appointed, may make a valid will, if actually restored to capacity at the time, though his restoration has not been judicially determined.

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Petition by J. H. N. Cobb for admission to probate of the alleged last will of Mary Hut-

ke, deceased, opposed by Samuel C. Davis, guardian of Lucy Buttons, and others, who tendered another instrument for probate. Probate of both instruments was denied, and appeals were taken to district court. Probate of the instrument offered by him being denied by district court, J. H. N. Cobb and Elizabeth Sapulpa, a beneficiary, bring error. The proceeding was consolidated with proceedings in error by Lucy Hill and others against Samuel C. Davis, guardian of Lucy Buttons, and others; the will offered by Davis having been admitted to probate. Affirmed.

Burt & Shaha, for plaintiffs in error in Nos. 7746 and 7747.

M. A. Holcomb and H. E. Baker, for plaintiffs in error in No. 7618.

W. J. Gregg, for defendants in error Davis, Buttons, and Poloke.

MILEY, J.   J. H. N. Cobb petitioned the county court of Creek county to have an instrument bearing date, the 28th day of April, 1914, proved as the will of Mary Hutke, deceased. By the terms of this instrument all of the property of the said Mary Hutke was devised and bequeathed to one Elizabeth Sapulpa, and the said J. H. N. Cobb was nominated as executor.

Samuel C. Davis, as guardian of Lucy Buttons and Lucy Poloke, appeared and contested the probate of that instrument upon the ground, among others, that the same had not been executed, published, and attested as required by the laws of this state. They also petitioned to have another instrument, bearing date the 24th day of January, 1912, proved as the will of the said Mary Hutke, deceased. By the terms of this instrument the entire estate of the decedent was devised and bequeathed to Lucy Buttons and Lucy Poloke in equal shares, and Samuel C. Davis was nominated as executor. Thereafter Lucy Hill, Ben Grayson, Van Grayson, and John Grayson appeared and filed written opposition to the probate of both wills, upon the ground, among others, of want of testamentary capacity and undue influence.

Upon hearing in the county court there was judgment refusing to admit either will to probate. Appeals were perfected to the district court, where, after hearing and trial de novo, judgment was rendered, refusing to admit to probate the instrument propounded by J. H. N. Cobb, to reverse which he and the said Elizabeth Sapulpa instituted proceedings in error in this court in cause No. 7746.

By the judgment of the district court, the instrument bearing date January 24, 1912, propounded by Samuel C. Davis et al., was admitted to probate as the last will and testament of Mary Hutke, deceased. To reverse this judgment, Lucy Hill et al. prosecute the proceeding in error in cause No. 7618; and J. H. N. Cobb and Elizabeth Sapulpa prosecute the proceeding in error in cause No. 7747. By agreement of the parties these three separate proceedings in error have been consolidated and will be considered together.

The district court sustained the ground of opposition to the probate of the instrument propounded by J. H. N. Cobb, bearing date April 28, 1914, that the same had not been published to and attested by the number of witnesses required by law.

This instrument was not written by the hand of the testator herself. Among other requisites prescribed by law for the execution and attestation of such a will are the following:

"The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will; and

"There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the will at the testator's request and in his presence." Rev. Laws 1910, sec. 8348.

Leroy J. Burt, Maxey Sims, and J. H. N. Cobb subscribed their names as witnesses to the will in the presence of the decedent and of each other. The uncontradicted evidence was, and the trial court found, that the decedent was a full-blood Creek Indian, who could speak and understand only the Creek language, and could not speak or understand the English language. The witnesses Leroy J. Burt and J. H. N. Cobb, who are of the white race, could speak and understand the English language, but could not speak or understand the Creek language. The other witness, Maxey Sims, could speak and understand both languages. Maxey Sims testified that, at the time her name was subscribed thereto, the decedent declared the instrument to be her will and requested the three witnesses to attest the same, speaking the Creek language. This was heard and understood by the witness Maxey Sims, but which, if heard, was not understood by the other witnesses, they being unable to understand the language of the testatrix. The witness Maxey Sims stated to the witnesses Burt and Cobb, in English; that the decedent had said the instrument was her will and that she requested them to sign as witnesses, which they heard and understood, but which, if heard, was not understood by the testatrix, for the

reason that she could not understand that language.

By signing their names, Burt and Cobb became subscribing witnesses to the instrument; but the statute requires that there be two attesting witnesses, and that the attesting witnesses subscribe their names. There is a distinction between attestation and subscription, which serve distinct and different purposes, both of which the statute requires. As was said in Swift v. Wiley, 1 B. Mon. (Ky.) 114:

"Attestation is the act of the senses; subscription is the act of the hand. The one is mental, the other mechanical, and to attest a will is to know that it was published as such, and to certify the facts required to constitute an actual and legal publication; but to subscribe a paper published as a will is only to write on the same paper the names of the witnesses, for the sole purpose of identification."

See, also, Downie's Will, 42 Wis. 66.

While Burt and Cobb can identify the paper as the one to which the name of the decedent was subscribed in their presence, yet they cannot know and certify that she at the time declared to them that the same was her will. All they can say on this point is that Maxey Sims told them the decedent so declared. When Maxey Sims was talking to the decedent, and the decedent to him, Burt and Cobb no more knew or understood what either was saying than if they had not been present. The same is true of the decedent, when Maxey Sims was talking to Burt and Cobb. The effect of what transpired there is the same as though the decedent had signed the instrument in the presence of the three witnesses, and then Burt and Cobb left her presence entirely, and when they were out of sight and sound, she had declared the instrument to be her will, and wanted Sims, Burt, and Cobb to witness the same, and Sims had then repeated the declaration and request to Burt and Cobb out of the presence and hearing of the decedent, and they had then signed as witnesses in her presence. In that case it would not be contended that the will had been properly executed. In re Williams' Will, 50 Mont. 142, 145 Pac. 957. While there was a physical presence at all times in the actual case, there was just as much absence of understanding as in the hypothetical case.

New York has a statute in reference to the formal requisites for the execution of a will very much like ours; the only difference being that it seems that it is not necessary for the attesting witnesses to subscribe the instrument in the presence of the testator.

In the case of Burke v. Nolan, 1 Dem. Sur. (N. Y.) 436, the surrogate analyzed and interpreted this statute, and from his opinion we quote as follows:

"The requirements of the statute, in relation to the execution of wills, which it will be necessary to consider in this case, are substantially that the will shall be subscribed by the testator; that such subscription shall be made by the testator in the presence of, or shall be acknowledged by him to have been so made to, each of at least two attesting witnesses; that the testator, at the time of making such subscription or acknowledgment, shall declare the instrument so subscribed to be his last will and testament; that each of the attesting witnesses shall sign his name at the request of the testator. Another statute provides that at least two of the attesting witnesses, if they are within the state, must be produced and examined, to prove the validity of the execution of a will, before it can be admitted to probate. Code, sections 2618, 2622, 2623.

"It is clear, therefore, that the law contemplates that all the above requirements of the statute, in regard to the execution of wills, shall be complied with, in the presence of the attesting witnesses, in such a manner that they may be able to testify on the subject, although their testimony is not always controlling. Stein v. Wilzinski, 4 Redf. [Sur. N. Y.] 441, 448; Scribner v. Crane, 2 Paige [N. Y.] 147 [21 Am. Dec. 81]; Tarrant v. Ware, 25 N. Y. 425, note; Trustees of Auburn Seminary v. Calhoun, 25 N. Y. 422; Orser v. Orser, 24 N. Y. 51; Matter of Kellum, 52 N. Y. 517; Wilson v. Hetterick, 2 Bradf. [Sur. N. Y.] 427. Hence it is necessary that the testator should in some manner communicate to the attesting witnesses, at the time of his subscription or acknowledgment, the information that the instrument which they are called upon to sign as witnesses is his will. Gilbert v. Knox, 52 N. Y. 125, 128; Lewis v. Lewis, 11 N. Y. 220, 226; Coffin v. Coffin, 23 N. Y. 1, 15 [80 Am. Dec. 235]; Seymour v. Van Wyck, 6 N. Y. 120.

"It is equally indispensable that the testator should communicate to the attesting witnesses his desire that they should sign the will as witnesses. Coffin v. Coffin, 23 N. Y. 1, 15; Peck v. Cary, 27 N. Y. 9 [84 Am. Dec. 220]; Gilbert v. Knox, supra; Matter of Kellum, 52 N. Y. supra. And if either communication is made through the intervention of a third person, it must be so made in the presence and hearing of the testator and of the witnesses, so that the attesting witnesses may know, of their own knowledge, that what was said or done by the third person on behalf of the testator was assented to by him. Redf. L. & Pr. Surr. Cts. (2d Ed.) 166; Coffin v. Coffin; Peck v. Cary; Gilbert v. Knox, supra; Thompson v. Stevens, 62 N. Y. 634; Stein v. Wilzinski, 4 Redf. [Sur. N. Y.] 441, 448; McDonough v. Loughlin, 20 Barb. [N. Y.] 238, 244.

"In case at bar, the will was signed by the testator affixing his mark thereto in the presence of the two attesting witnesses. The witness Smith says that he was standing in the doorway leading into the small room where the will was executed, and saw the testator sign the will. The witness Laffin says that he was standing in the middle of the large room, behind Smith; that he could see the testator; that he stood in front of the bedroom, looking in.. When asked if he saw the testator sign the will, he answered that he saw his hand on the pen. The will was signed in his presence, within the decisions. 1 Jarman on Wills (Randolph & Talcott's Ed.) 222, 234, 253; 1 Redf. on Wills, 244, 252, 284; Probate of Wills of Patrick Flaherty, Ms. Op. in this court (Sept. 27, 1881). But there was neither a declaration to the witness Laffin of the nature of the instrument executed, nor a request to him to sign it as a witness. The testator was very ill and feeble, and did not speak to him at all; in fact, Laffin did not go near him, but remained all the time in the large room. Mr Kirkham, the lawyer who drew the will and superintended its execution, sat by the bedside of the sick man, and read the will to him. Kirkham asked Burke if he declared it to be his will, and if he wanted 'those gentlemen' to witness it, Burke made some motion, or said 'yes,' or something of the kind—he answered affirmatively. Kirkham, it seems, did not mention any names, and it does not appear that the testator knew whom he referred to. There is no evidence that the testator knew that Smith and Laffin were there for the purpose of witnessing his will.

"The testator was, within 48 hours of his death, very weak and feeble, and was not at all in a condition to observe or take notice of things not pressed upon his attention. Under such circumstances, it must appear that the questions which were asked were made very clear to him. Heath v. Cole, 15 Hun [N. Y.] 100. But, independently of that, Laffin was too far from Kirkham and the testator to hear what Kirkham was reading to the testator, or what was said between them, and as a matter of fact he did not hear it. He so swears, and there is no reason to doubt the truth of his statement. As to him, therefore, there was no valid request to sign, and no valid declaration that the paper was a will. Burritt v. Silliman, 16 Barb. [N. Y.] 198, 211. * * * After Kirkham came out of the small bedroom, he asked the witnesses if they would witness the will, and sign the will as witnesses in the large room; but there is nothing to show that the testator did or could hear this request to the witnesses, and, in the condition in which he was, it is not at all likely that he did hear it. * * * And, upon the evidence, it cannot be said that there was a proper declaration to both witnesses that the instrument sigend by the testator was his will, or that there was a sufficient request to both to sign it."

Much of the reasoning in that case is applicable to this, and to us seems entirely sound. We also quote with approval part of the syllabus in Stein v. Wilzinski, 4 Redf. Sur. (N. Y.) 441:

"It seems that the subscription as a witness to the will by a person who is unable to understand the testator, or make himself understood by him, and to whom the declaration and request of the testator must be translated, is not a compliance with the statute."

In the opinion the surrogate said:

"The object of requiring two subscribing witnesses is undoubtedly to guard against imposition upon, or mistake of, the testator, and in a case where one of the witnesses must depend upon the statement of the other as to what is said by the testator, he would appear to be a witness only as to the act of signing, and if that were literally true in this this case, I should certainly hesitate in holding it sufficient proof. Suppose, for example, both subscribing witnesses had been incapable of understanding a word of what decedent said, and an interpreter had stated to them, respectively, that the decedent declared to them that the instrument was her last will and testament, and that she requested them to subscribe their names as witnesses thereto. They would have no assurance of the fact, except the statement of the interpreter, and the verity of the act would seem to be entirely dependent upon his testimony, as to the truthful interpretation. And it seems to me that it would fall short, altogether, of the proof of the material facts required by the statute and that those declarations, thus interpreted to two witnesses, would add nothing to a like interpretation to one."

In Re Williams' Will, 50 Mont. 142, 145 Pac. 957, it was said in reference to an identical statute:

"It is imperative * * * that the witnesses, at the time they attest, be informed in some way by the testator himself that the instrument he has subscribed is his will. Knowledge of this fact, derived from any other source or at any other time, will not suffice."

The right to dispose of property by will is a creature of the statute. The Legislature has the power, in granting the right, to determine and prescribe the form and manner in which it shall be exercised. In requiring that the testator shall declare to two attesting witnesses that the instrument not in his handwriting is his will, the Legislature no doubt intended it as a safeguard against imposition and fraud. The provisions of the statute quoted are mandatory, and there must be substantial compliance therewith. To hold that requirement was complied with in this instance, it seems to us, would subvert the purpose and intent of the statute,

and would amount to a disregard of its substance. We think the trial court properly held the proof insufficient to admit the will to probate.

This conclusion is in conflict with the views expressed in the opinion in Bell v. Davis, 55 Okla. 121, 155 Pac. 1132, prepared by Commissioner Brewer and adopted by this court. Authorities to the effect that it is no objection to its validity that the will is written in a language not understood by the testator are not to our minds in point on the question involved here, since there is no statutory requirement that the will be written in the language spoken by the testator. Nor do we regard the holding in Terrapin v. Barker, 26 Okla. 93, 109 Pac. 931, and similar cases, as having any bearing on the question, since to do so would assume that one may by parol constitute another his agent to execute his will. It follows that the opinion in Bell v. Davis, supra, in so far as same is in conflict with the views herein expressed is overruled.

The will dated January 25, 1912, propounded by Samuel C. Davis, appears to have been formally executed, published, and attested as required by statute. The two attesting witnesses spoke and understood the language of the testator. While the will was written in the English language, which the testatrix did not understand, yet it was interpreted to her, not only by one of the attesting witnesses, but also by the interpreter employed by the United States Indian agent, and carefully explained to her, and it satisfactorily appears that her then existing wishes and desires as to the disposition of her estate were fully and correctly expressed. There has not been called to our attention, nor have we been able to discover in the record, a scintilla of evidence that the execution of this will was procured by the exercise of undue influence. Upon the issue of testamentary capacity, it appears that the testatrix had, prior to the time of the execution of the will, been adjudged incompetent to manage her property, and a guardian of her estate appointed. Her restoration to capacity had not been judicially determined, and the guardianship in fact continued to her death. But she could, nevertheless, make a valid will, if she had been in fact actually restored to capacity at the time of its execution. By statute in force at the time it was provided:

"After his incapacity has been judicially determined a person of unsound mind can make no conveyance or other contract, nor designate any power, nor waive any right, until his restoration to capacity is judicially determined. But if actually restored to capacity, he may make a will, though his restor-

ation is not thus determined." Rev. Laws 1910, sec. 890.

The district court found that the testatrix, at the time of the execution of the will, had sufficient testamentary capacity. This finding appears to us to be supported by the evidence.

The judgments of the trial court are in all things affirmed.

All the Justices concur, except KANE, J., absent.