## In re WILL of TIGER.

No. 12004—Opinion Filed Dec. 4, 1923.

**1. Wills—Attestation of Nonholographic Will—Insufficiency.**

On proceedings to probate a nonholographic will, it appeared that the decedent could speak and understand only the Creek language. Two of the three witnesses who purported to attest the execution thereof could not speak and understand that language, but only the English language; one of the witnesses could speak and understand both languages. The declaration that the instrument was her will and the request that the witnesses sign their names thereto as such were made by the decedent in the Creek language, which was understood by one of the witnesses, but not by the others. The declaration and request were interpreted and repeated in English by one witness to the other two, but the decedent could not understand the same. Held, the declaration that the instrument was her will and the request that the witnesses sign the same were made by the decedent to only one attesting witness, and probate thereof was

properly denied; the statute requiring that there be two attesting witnesses to whom the declaration and request must be made— following Hill v. Davis, 64 Okla. 253, 167 Pac. 465.

### 2. Indians—Execution of Wills—Effect of Federal Statutes.

The act of Congress, regulating wills of full-blood Indian citizens, had for its purpose the further removal of restrictions from the citizens of the Five Civilized Tribes of Indians, and was not intended by Congress as conferring an absolute right of disposition of his property without regard to the law of the state where the property is located. Congress merely authorized the Indian to dispose of his estate on the same footing as any other citizen, with the limitation contained in the proviso thereto, and the will of a full-blood Indian must be executed under all the formalities and requirements of the statute law of this state as to the signing, witnessing, publishing, and attesting the same, as is required of any other citizen of this state of whatever degree of blood or nationality.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Okmulgee County; Lucien B. Wright, Judge.

Action for the probate of the last will of Winey Tiger, deceased. Judgment in favor of the protestant of the will, and proponent brings error. Affirmed.

Wm. M. Matthews, for appellants.

Frank F. Lamb, for appellee.

Opinion by THOMPSON, C. This action originated in the county court of Okmulgee county, in a proceeding to probate a will made by Winey Tiger, a full-blood Creek Indian, which will was admitted to probate by the county court, and from the order of the county court, admitting said will to probate, John Tiger, a grandson of Winey Tiger and the contestant of the will, appealed to the district court of Okmulgee county

The petition for the probate of the will alleged that Winey Tiger died on or about the 10th day of June, 1913, a resident of Okmulgee county, leaving a will bearing the date of the 4th of March, 1912. It further alleges that the heirs and devisees are John Tiger, a minor, and Iva M. Reading, and that O. K. Peck, the petitioner, is named as executor. The will gave to John Tiger $100 and all the personal property of the testator and to Iva M. Reading the allotment of testator, comprising a 160 acre tract of land, located in Okmulgee county, Okla. John Tiger, a grandson of the deceased, and the only surviving heir at law, through his guardian ad litem, filed his petition of contest in the county court, in which he charges, among other things, that Winey Tiger was a full-blood citizen of the Creek Nation, was of —— years of age and was sick, infirm, and debilitated, mentally and physically, and that, at the time of the making of the will, she was not of sound mind; that the allotment was restricted land and the will had not been approved by the United States Commissioner or judge of the United States Court and that Iva M. Reading procured the will to be executed by the use of undue influence and by the use of money and presents; that the will proposed is not and was not signed, executed, declared, nor published, as provided by law, and is void and of no force and effect; that the three subscribing witnesses to the will were one who spoke and understood both the English and Creek languages, and two others, who could speak and understand English, but not the Creek language. The Creek language was the vernacular of the testator.

The cause was tried to the court, without the intervention of a jury, which resulted in a judgment in favor of the protestant, John Tiger, in the following language:

"Now upon the 1st day of May, 1920, this cause came on further to be heard and the court having read the briefs of the parties and being fully advised in the matter doth find for the protestants and does sustain the protest and does find that Winey Tiger was a full-blood Creek woman, being very old at the time of the making of the will proposed. That she could not speak nor understand the English language. That the said will was not executed, attested nor published as provided by law and it is the judgment of this court and it is hereby ordered, decreed and adjudged that the petition asking that the said will be probated as the last will and testament of Winey Tiger be and the same is hereby denied and the said will is hereby denied to probate, to all of which orders and judgments of the court the proponent, Iva M. Reading, excepts, O. K. Peck, executor, and Iva M. Reading, devisee, give notice of appeal to the Supreme Court of Oklahoma."

A motion for new trial was filed by the proponent, which was overruled and exceptions reserved, and the cause comes regularly on appeal to this court from said judgment.

Attorney for appellant, in his brief, sets out nine assignments of error, but contents himself in presenting them under four distinct heads, which are as follows:

1. "In the contest of a will the parties are not entitled to trial by jury; it being a non-jury case, this court will review the evi-

dence and determine where the preponderance lies and render such judgment as the trial court ought to have rendered in the first instance.

2. "That Winey Tiger could speak and understand the English language is shown by a clear preponderance of the evidence.

3. "Under the Oklahoma law a will may be legally attested and published through an interpreter.

4. "Under the act of April 26, 1906, Congress prescribed the terms and conditions under which a full-blood Indian could make a will, and the state cannot make additional requirements."

Upon the first proposition, presented by counsel for appellants, we agree with counsel that, in a case of this character triable to the court, it is the duty of the court to examine and consider the whole record, to weigh the evidence and if the judgment of the trial court is found to be clearly against the weight of the evidence it is our duty to render, or cause to be rendered, such judgment as the trial court should have rendered in the first instance, and, on the contrary, if we find that the judgment of the trial court is not clearly against the weight of the evidence, it is our duty to affirm the judgment of the trial court. This proposition has been decided so many times by this court that it is useless to cite authorities in support of the principle above set forth.

Then, passing to the second ground of contention of attorney for appellants that Winey Tiger could speak and understand the English language, as shown by a clear preponderance of the evidence, the court passed squarely upon this proposition adversely to this contention, and we have read carefully every word of the testimony in this record upon this proposition and we find that the testimony of the interpreter and the witnesses, who signed the will, all agree that there was not one word of English spoken by the testator, in their presence, in the office of the attorney, who prepared the will; that the interpreter was the only one who understood the Creek language, and the other two witnesses to the will could not speak nor understand the Creek language, and that the only expression used by the testor was a nodding of the head and the word "umugh", which, the interpreter said, meant "yes." The two English speaking witnesses did not know whether the interpreter interpreted the will correctly to the testator or not, did not know whether she intended that they should sign the will as witnesses, did not know that she proclaimed the will as her will, except through the words of the

interpreter and the nodding of the head and the use of the word, above set forth in this opinion. The evidence is very conflicting upon the proposition as to whether the testator could understand the English language except in a very limited degree. All of the witnesses on both sides agree that she could speak a few words in English, some of the witnesses for the proponent gave as their opinion that she could understand English, but the witnesses for the protestant, including P. I. Brown, one of the signers of the will, said that she always had an interpreter when she transacted any business of any consequence; that when she went to make purchases in the stores she would point out the articles she wanted or draw pictures, and the witnesses, including city officials of Okmulgee, bankers, U. S. officials, lawyers, farmers, merchants, druggists, doctors, and stockmen, testified that they could not make her understand the English language. The undisputed testimony of one of the witnesses for the protestant is that the interpreter of the will, Lewis Robinson, a few days after the death of the testator, told him that Iva M. Reading, who, by the terms of the will, got the entire allotment of 160 acres of Winey Tiger, only received, under the will, 39 acres of land upon which a school house is located, and this 39 acres was separated by a road and section line from the other 120, showing conclusively to the mind of the court that he, himself, did not understand that by the terms of the will that she conveyed the entire 160 acres to Iva M. Reading, as he said in that conversation that the remaining 120 acres went to John Tiger, as he was the only grandson of the testator. But, from this testimony, which is conclusive to the mind of the court, that Lewis Robinson, the interpreter, did not know the contents of the will, the question arises how it was possible for him to have correctly interpreted the terms of the will to the testator. The will, itself, is unreasonable in its terms, for the reason that the testator cuts off her only living blood relative and gives the only valuable part of her property to a stranger in blood, and to one who has no natural claim upon her bounty. After a careful reading and consideration of all the testimony in this case, we think the court rightly held that the testator could not speak nor understand the English language to such a degree, as required under the law, to bring her within the rule that would be applied to one, who spoke and understood the English language, and we are clearly of the opinion that the preponderance of the evidence upon this proposition is with the protestant and that the judgment of the court is not

clearly against the weight of the evidence and we do not think that the decision of the trial court should be reversed upon this proposition.

On the third proposition this court is of the opinion that whatever may be the decisions of courts of other jurisdictions, the court of our state has spoken in no uncertain terms in a case where a will has been attested and published through an interpreter, under the conditions under which this will was executed.

In the case of Hill v. Davis, 64 Okla. 253, 167 Pac. 465, this court held:

"On proceedings to probate a nonholographic will, it appeared that the decedent could speak and understand only the Creek language. Two of the three witnesses, who purported to attest the execution thereof, could not speak and understand that language, but only the English language; one of the witnesses could speak and understand both languages. The declaration that the instrument was her will and the request that the witnesses sign their names thereto as such were made by the decedent in the Creek language, which was understood by one of the witnesses, but not by the others. The declaration and request were interpreted and repeated in English by the one witness to the other two, but the decedent could not understand the same. Held, that the declaration that the instrument was her will and the request that the witnesses sign the same were made by the decedent to only one attesting witness, and probate thereof was properly denied; the statute requiring that there be two attesting witnesses to whom the declaration and request must be made—overruling Bell, Adm'r, v. Davis, 55 Okla. 121, 155 Pac. 1122."

In the instant case Lewis Robinson was the only witness who spoke and understood both the Creek and English languages, and we have heretofore held that the testator could not speak and understand the English language, and the other two witnesses, Sill Biggerstaff and P. I. Brown, both testified that they spoke and understood the English language only; and all agree that the testator did not speak any English word in their presence at the time the will was executed and attested by them, and all the English-speaking witnesses knew about what she said or what was interpreted to her in regard to the will was from the interpreter Lewis Robinson, which facts correspond identically with the facts in the case, supra, and following that case we are compelled to say that the declaration that the instrument was her will and the request that the witnesses sign the same were made by the decedent to one attesting witness and must conclude that the probate thereof was properly

denied by the lower court, as the statute requires that there be two attesting witnesses to whom the declaration and request must be made. We have examined carefully the cases of In re Klufa's Estate, 78 Okla. 13, 188 Pac. 329, and In re Son-se-Gras' Will, 78 Okla. 213, 189 Pac. 865, and we find the facts in those two cases are entirely different. In the first case, one of the witnesses could speak the Bohemian language and the other one could understand the Bohemian language, but could not speak it, and understood the interpretation made by the interpreter, and, in the last mentioned case, one of the witnesses could speak both the English and Osage languages and the other witnesses could understand the Osage language, but could not speak it, but, in the instant case two of the witnesses could neither speak nor understand the Creek language, which state of facts is entirely different to the two cases, cited by counsel, and there is a clear line of distinction between those two cases and the case of Hill v. Davis, supra.

The fourth contention, that under the act of Congress of April 26, 1906, the will of a full-blood Indian could be made without following the state statute in regard thereto, cannot be sustained, as this court, in the very recent case of James H. Blundell, Executor of the Last Will and Testament of Patsy Poff, Deceased, et al. v. W. R. Wallace, 96 Okla. 26, 220 Pac. 40, decided by Justice Branson, and the cases therein cited, held that there was no conflict between the federal statute regulating wills of full-blood Indian citizens and the state statute as to the formalities required by the state statute in the execution, attestation, and publication of wills; that the congressional act, giving authority to dispose of land by will by a full-blood, was of the nature of further removal of restrictions theretofore existing against alienation and not in its nature conferring a right, in the following language:

"This provision of the act of congress had for its purpose the further removal of restrictions from citizens of the Five Civilized Tribes of Indians, and was not intended by congress as conferring an absolute right of disposition of his property without regard to the law of the state where the property is located."

And in this opinion we find the following language:

"In other words, Congress merely authorized the Indian to dispose of his estate on the same footing as any other citizen,

with the limitation contained in the proviso thereto."

The proviso referred to is that the Indian could not disinherit the wife, spouse, or child, unless the will was acknowledged before and approved by a judge of the United States Court for the Indian Territory, or a United States Commissioner, which act was afterwards amended to substitute the county or probate court as the authority to approve the will, and it is, therefore, our opinion that the will of a full-blood Indian must be executed under all the formalities and requirements of the law as to the signing, witnessing, and publishing and attesting the same as is required of any and all other citizens of this state of whatever degree of blood or nationality.

Having arrived at the conclusions heretofore set forth in this opinion, it is the opinion of this court that the judgment of the lower court should be, and is hereby, affirmed.

By the Court: It is so ordered.