John Henry PRICE and George V. Price,
Plaintiffs in Error,

v.

Robert G. PRICE, James L. Price, Margaret
Price Bradley, Minnie Glass, Henry
Bowles, Annie Bowles and Price Cattle
Company, Defendants in Error.

No. 42633.

Supreme Court of Oklahoma.

Jan. 19, 1971.

Fischl, Culp & McMillin, Ardmore, for plaintiffs in error.

William L. Anderson, Oklahoma City, and James H. Ivy, Waurika, for defendants in error.

McINERNEY, Justice.

This case involves a family will contest between, substantially, those children of the deceased taking under a 1964 will (the proponents), as against those children challenging the will (the contestants). The District Court of Jefferson County, as did the County Court, admitted the will to probate.

Numerous issues have been raised, but we find the one dispositive of this case to be whether or not there was a proper and valid execution of the will. The evidence surrounding the execution of the will is, essentially, as follows:

The testator, 86 and suffering from an advanced case of Parkinson's disease, exe-

cuted the will herein on January 7, 1964. The two attesting witnesses were Mrs. S, his nurse, and Mr. B, one of his ranch hands. Also present was his youngest son Robert, principal proponent of the will and its chief beneficiary. Robert read the typewritten will to his father in Mrs. S's presence, and the testator expressed his satisfaction therewith. The testator then directed Robert to go and summon Mr. B as a witness. Robert therefore went out to the yard where Mr. B was working and advised him that he was wanted in the house to witness the testator's will. When all were assembled back in the house, Robert then asked the testator the question, "Dad, is this the way you want this to be?" to which the testator nodded or expressed assent. Because of his tremor the testator asked Mrs. S to help him sign the paper, which she did, holding and guiding his hand in hers. Testator then pushed the paper across the table to Mr. B with the indication that he too should sign, which he did, but without reading or examining it, or being informed by the testator of its contents. Mrs. S then signed, and Mr. B left the room. Thereafter, testator handed the will to Robert with the statement, "Use this if you have to."

The execution of non-holographic wills is governed by 84 O.S.1961, § 55, which provides in part:

"Every [non-holographic] will * * * must be executed and attested as follows:

3. The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will; and,

4. There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the will at the testator's request and in his presence."

The intent of the statute is clear, and its purpose reasonable. The testator of a non-holographic will should remove doubt and uncertainty as to the fact of his executing a will, by himself declaring in an understandable manner to at least two dis-interested witnesses that the instrument he is signing is in fact his *will*.

The application of these considerations is demonstrated by our prior decisions in Hill v. Davis, 64 Okl. 253, 167 P. 465 (1917), McCarty v. Weatherly, 85 Okl. 123, 204 P. 632 (1922), and In re Tiger's Will, 94 Okl. 103, 221 P. 441 (1923), wherein Indian testators, not speaking the English language, had made their statutorily-required declarations to non-Indian-speaking witnesses through interpreters. We held that the testators' declarations in their own tongues were in effect made only to the interpreters, and that the purported attestations of the witnesses who could not *personally* vouch for the fact that the Indians' statements were indeed testamentary were therefore fatally deficient. And where there was but *one* witness who could personally understand the testator, the executions themselves were voided as failing in the statutory requirement for *two* attesting witnesses. There was further language in Hill v. Davis, supra, 64 Okl. at 255, 167 P. at 466, which we feel applied especially to the case at bar:

"The effect of what transpired there is the same as though the decedent had signed the instrument in the presence of the three witnesses, and then Burt and Cobb [the non-Creek-speaking witnesses] left her presence entirely and when they were out of sight and sound, she had declared the instrument to be her will, and wanted Sims, Burt, and Cobb to witness the same, and Sims [the interpreter] had then repeated the declaration and request to Burt and Cobb out of the presence and hearing of the decedent, and they had then signed as witnesses in her presence. In that case it would not be contended that the will had been properly executed. In re Williams' Will, 50 Mont. 142, 145 P. 957."

The contestants argue on the basis of the foregoing that what Robert told Mr. B out in the yard about coming in to witness his father's will should have been excluded from consideration, since it is the

*testator's* declarations that control. We agree. The question, therefore, is whether the verbal exchange back in the house of Robert asking his father, before Mr. B, "Dad, is this the way you want this to be?" followed by the testator's assent, constituted a sufficient declaration *by the testator himself* to Mr. B that the instrument being signed was in fact his will.

We think not. First, the words themselves, while undeniably importing some sense of gravity to the document, are still ambiguous as to the precise nature or essential content thereof; they could as easily refer to any type of legal paper. Second, Mr. B himself testified that he did not read or examine the instrument he was signing, not even the attestation clause itself, right above his signature. Finally, there was Mr. B's further testimony that he had never witnessed a will before, had never had one of his own, and apparently had had little experience or contact with legal matters or papers in his entire life. Taking the evidence as a whole, we feel it reasonably clear that had it not been for Robert's statement out in the yard, Mr. B simply would not have been aware, either directly or by any reasonably inferable circumstance, that it was Mr. Price's *will* that he was witnessing. Mr. B expressly admitted as much on cross-examination. In short, the testator's physical presence in executing the will when Mr. B signed as a witness, without facts and circumstances sufficient for Mr. B to conclude from the testator himself that "the testator's intelligent acquiescence distinct appears" in declaring his *will* and requesting its attestation, is insufficient compliance with the mandate of the statute, § 55, supra. In Re Atohka's Estate, Okl., 282 P.2d 737, 740 (1955). More is required in establishing the execution of a will than is required to prove the execution of some other instrument of less formality than a will. In Re Stover's Will, 104 Okl. 251, 231 P. 212, 213 (1924).

Since the failure of Mr. B's attestation leaves only the one attestation by Mrs. S, or less than the required two attestations, the execution itself therefore falls, and with it the will.

In reaching this conclusion we are not unmindful of the host of authority, especially Oklahoma authority, submitted by the proponents in support of their proposition that a testator's declaration need not be in any particular formalistic mode, that it may be indicated sometimes by silent gesture or even mute acquiescence, or possibly as otherwise inferable from peculiar circumstances as appropriate in an individual case. Proponents' Oklahoma citations sustaining executions by the foregoing are as follows: In re Sawyer's Estate, 202 Okl. 21, 209 P.2d 864 (1949), Speaks v. Speaks, 98 Okl. 57, 224 P. 533 (1924), In re Adam's Estate, 149 Okl. 90, 299 P. 226 (1931), and In re Belmore's Estate, 189 Okl. 86, 113 P.2d 817 (1941). See also the oft-Oklahoma-cited California decision of In re Silva's Estate, 169 Cal. 116, 145 P. 1015 (1915), and the more recent In re Estate of Hering, Okl., 426 P.2d 685 (1967). Upon careful examination of these cases, however, it appears typically that the testator, in the presence of the witnesses, had either himself somehow at least mentioned the word "will", or had had the will read to him, or had heard the scrivener or attorney mention the word "will" (with the testator's subsequent acquiescence), and in one extreme instance had at least made a telling statement to the effect of "giving his stuff away." Other specific fact situations are collected in the annotations "Will—Sufficiency of Publication," 60 A.L.R.2d 124 (1958), and "Wills—Witnesses—Request by Testator", 125 A.L.R. 414 (1940). It still appears therefrom, however, that somehow the word "will" or the equivalent was yet spoken by or to the testator in the presence of the witnesses.

Proponents urge, and cite cases to support, a "liberal" interpretation when fraud or its equivalent is not suspected. We do not agree. If fraud is proven, of course, then any consideration of a will's execution is immaterial. If fraud is not demon-

strated in accordance with the laws of evidence, then courts have no business erecting a strict interpretation of the attestation statute merely to quash *suspected* fraud. Conversely, if a certain attestation be defective, courts likewise have no right indulging an overly liberal view of the execution statute's requirements merely to salvage a "just" testamentary disposition. In other words, since considerations of the attestations are immaterial where fraud is proven, consideration of unproven fraud is similarly irrelevant in determining whether the mechanics of a particular execution are or are not in substantial compliance with the statute. The physical aspects of an execution should be judged by a *uniform* standard, irrespective of the legally immaterial consideration of whether fraud may or may not be *suspected.*

We have also considered the principle submitted by the proponents from one of our neighboring States:

"If the strict construction of the statute here advocated by appellant were approved, it could, in all probability, invalidate many wills heretofore drawn by competent and careful attorneys. The purpose of the law relative to the execution of wills is and should be to protect testamentary conveyances against fraud and deception and not to impede them with technicalities."

Hanel v. Springle, 237 Ark. 356, 372 S.W. 2d 822, 824 (1963).

With this view we express no basic disagreement. In fact, the very cases relied on by the proponents indicate to what lengths this Court has been willing to go to excuse even marked non-compliance with the statute, in an effort to save from the pitfalls of technicalities our citizens' final dispositions of their lifetime accumulations. The judicial process of probate, however, consists in large measure in drawing a line somewhere between compliance and non-compliance with the law. For the reasons expressed herein, we feel that the purported execution in this case simply transgresses that limit.

We adhere to the rule announced in Hill v. Davis, 64 Okl. 253, at 256–257, 167 P. 465, at 468:

"The right to dispose of property by will is a creature of the statute. The Legislature has the power, in granting the right, to determine and prescribe the form and manner in which it shall be exercised. In requiring that the testator shall declare to two attesting witnesses that the instrument not in his handwriting is his will, the Legislature no doubt intended it as a safeguard against imposition and fraud. The provisions of the statute quoted are mandatory, and there must be substantial compliance therewith. To hold that requirement was complied with in this instance, it seems to us, would subvert the purpose and intent of the statute, and would amount to a disregard of its substance."

In view of the disposition announced, it is unnecessary to consider the contestants' other contentions relating to lack of testamentary capacity, fraud, forgery, duress and undue influence.

Reversed and remanded with directions to vacate the order admitting the will to probate.

DAVISON, V. C. J., and WILLIAMS, JACKSON, IRWIN and HODGES, JJ., concur.

BERRY, C. J., concur in result.

BLACKBIRD and LAVENDER, JJ., dissent.