MOORE et al. v. GLOVER.

No. 31924. Nov. 27, 1945.

*163 P. 2d 1003.*

E. C. Stanard, Leonard Carey, Norton Stanard, and John Levergood, all of Shawnee, for plaintiffs in error.

Randall Pitman, Clarence Tankersley, and Randall Pitman, Jr., all of Shawnee, for defendant in error.

PER CURIAM. This is an appeal from a judgment of the district court of Pottawatomie county by Reta Lee Moore, Betty Jo Moore, Nancy Hunt, and F. N. Buie, admitting the will of Audry Burk Bazzell to probate.

Nancy Hunt was an aunt and F. N. Buie was an uncle of the deceased and Reta Lee Moore and Betty Jo Moore were her cousins and will be hereinafter referred to as contestants.

Mrs. Bazzell died on the 27th day of September, 1943, leaving surviving her neither husband nor children nor father nor mother. On the 21st day of July, 1943, she executed a will whereby, after bequeathing one dollar to each contestant Reta Lee Moore and Betty Jo Moore and one dollar each to several other persons not here involved, she devised and bequeathed all the remainder of her property both real and personal to Dorothy Glover, who will hereinafter be referred to as proponent. Miss Glover was a nurse and waited upon deceased for several years prior to her death for which she received a very nominal compensation.

Proponent presented the will for probate to the county court of said county and contestants protested the probate thereof on the ground of lack of testamentary capacity, undue influence, and that the will was not executed in the manner provided by law.

The county court denied probate and proponent appealed to the district court, where upon trial de novo the judgment of the county court was reversed and the will ordered admitted to probate. Contestants assert that the order and judgment of the district court is not supported by the evidence and is contrary to law.

It is urged that the evidence discloses deceased was not competent to make a will; that she was mentally unsound at the time she executed the same.

Numerous lay witnesses testified as to her mental condition. They all agreed that she was in poor health for many years prior to her death and was physically unable to care for herself and to transact business. Several of these witnesses also testified that she appeared to be mentally affected and in their opinion incompetent to make a will. Others, seven in number, who were close neighbors of deceased, testified to the contrary. They testified that while deceased was physically weak, she was mentally alert; that for several years prior to her death they had almost daily contact with her. They visited in her home and over the telephone; that she was able to carry on an intelligent and rational conversation, knew and understood what she was doing and seemed to be mentally bright. Several of these witnesses testified that she discussed business affairs with them, knew and understood the nature, character, and the value of her property; that she stated to them that her distant relatives did not seem to care for her and that she intended to will all of her property to her nurse, Dorothy Glover. All of these witnesses testified that from their observation and contact with deceased she was in their opinion competent to make a will.

Dr. Campbell testified that he first examined deceased in the latter part of the year 1939; that in his opinion she was at that time competent to transact business. He again saw her at his clinic on the 20th day of July, 1943; that she then appeared to be in a very weakened physical condition, was not able to walk and was in such physical

condition that she was scarcely able to talk. She appeared to be suffering and complained of pain in her abdomen and he advised her to see a specialist. He made no examination at that time for the purpose of determining her mental condition and was not in a position to give a definite opinion as to her mental capacity, but that from her appearance and casual conversation with her he came to the conclusion that she was not mentally able to comprehend and understand and know the nature of her property and the disposition which should be made of her property and business affairs.

Dr. Rowland testified that he made an examination of deceased on the 23rd day of July, 1943, for the purpose of determining her mental condition; that she was physically weak but mentally bright and in his opinion was at that time capable of transacting her business; that she understood and knew the nature and condition of her property and business affairs and was mentally competent to make disposition thereof. We shall in more detail refer to his testimony later in this opinion.

The record discloses that on the 24th day of July, 1943, four days after the execution of the will, deceased was adjudged insane by the county court of said county and confined to the hospital for the insane at Norman. In this proceeding Drs. Rowland and Applewhite were appointed to examine deceased as to her mental condition and make report thereof to the court. These physicians, after making the examination, reported and described her condition as follows: "irrational, no coordination and atoxia." On this report the adjudication was made.

Dr. Applewhite did not testify in this proceeding. Dr. Rowland, however, did. He testified that he was one of the physicians who examined deceased at the insanity hearing. She had a tumor of the brain which affected coordination of the muscles, her movement, and especially it affected the use of her limbs and arms and digestive system

in stomach and bowels. He suggested to her that she go to Norman for medical treatment. She protested for the reason that if she left she would have no one to look after her property. He then suggested that she take the matter up with the county judge; that she did so and after talking with the county judge she consented to enter the hospital for treatment. She was at that time very weak physically but not mentally. She knew what she wanted to do but was not physically able to do the same; and further testified as heretofore stated.

In the absence of the evidence relative to the adjudication of insanity, there is little, if any, satisfactory evidence tending to establish that deceased lacked testamentary capacity at the time of the execution of the will. This adjudication should, of course, be taken into consideration in connection with the other evidence in the case for the purpose of determining as to whether deceased at the time she executed the will lacked testamentary capacity, but such evidence of itself does not constitute conclusive evidence of lack of such capacity. We have on different occasions said the mere fact that a testator prior or immediately after the execution of a will is adjudged to be mentally incompetent and a guardian appointed for his estate does not constitute conclusive evidence of lack of testamentary capacity. Hill v. Davis, 64 Okla. 253, 167 P. 465; Re Wah-kon-tah-he-um-pah's Estate, 108 Okla. 1, 232 P. 46; Shipman v. Shipman, 184 Okla. 56, 85 P. 2d 317. The same rule applies to an adjudication of insanity, especially where the adjudication takes place subsequent to the execution of the will.

In 68 C. J. at page 437, it is said:

"A person is not incompetent to make a will because he has been adjudicated to be of unsound mind or incapable of managing his property, and a guardian of his person or estate has been appointed, or because he has been confined to an insane hospital. Conversely, a judg-

ment declaring him to be of sound mind is not conclusive as to his competency."

In 7 A. L. R. 602, the author states:

"An adjudication of insanity is not conclusive, but only presumptive, evidence of testamentary incapacity, whether made before or after the execution of the will."

An examination of the authorities appearing in the annotation will disclose that the authorities generally hold that an adjudication of insanity either before or immediately after the execution of the will does not constitute conclusive evidence of mental incapacity of the testator.

We think the evidence taken as a whole fairly establishes that the deceased at the time of making the will understood and knew the nature of her property and understood and knew what disposition she was at the time making of the same and sufficient to justify the finding that she was at the time of sound mind and memory. Mason v. Utterback, 185 Okla. 278, 91 P. 2d 657; Lincoln v. Lincoln, 185 Okla. 464, 54 P. 2d 227; Amos v. Fish, 193 Okla. 406, 144 P. 2d 967.

Contestants further contend that the will is invalid for the reason that it was not executed in the manner and form as provided by law. In this connection it is urged that one of the attesting witnesses to the will did not subscribe his name thereto in the presence of testatrix.

The evidence in this respect discloses deceased, the day on which the will was executed by her, called Mrs. Ruth Cooper over the telephone, made the request that she call at her home, and upon her arrival informed her that she desired to have a will drawn; informed her as to the disposition she desired to make of her property; that she desired to give certain persons one dollar each and intended to will the remainder of her property to Dorothy Glover. Mrs. Cooper made a written memorandum of the data then furnished her by deceased and at her request took the same

to a lawyer and from such memorandum the will was drawn by him, and she then delivered the same to deceased at her home. The will was read by her and signed, no attesting witness being present at the time.

Immediately after the signing of the will, deceased, Mrs. Cooper, and proponent drove in Mrs. Cooper's car to Harry Thompson's filling station in order to have the execution of the will witnessed. Mrs. Cooper introduced the deceased to Mr. Thompson and deceased handed him the will, stated that it was her will and requested him to sign as a witness. Mr. Thompson took the will, entered the filling station to a desk located therein and there signed the will as a witness and returned it unfolded to deceased. Deceased remained in the car while the will was being attested by Mr. Thompson. She was physically unable to leave the car. The station was located approximately four feet south of where the car was parked. The car was facing east, deceased was sitting in the rear seat on the right side thereof, in which position she could see Mr. Thompson while entering the station. The door to the station was open. Immediately in front of the desk where Mr. Thompson was sitting at the time he attested the will there was a large glass window through which he could plainly have been seen while approaching the desk and while seated there in the act of signing his name. Deceased could not, however, have seen the instrument on the desk nor the pen in the hand of Mr. Thompson nor the movement of his hand or arm while in the act of signing. After the will had been attested by Mr. Thompson it was then attested by another witness in the absence of Mr. Thompson.

It is first contended that the will was not attested by Mr. Thompson in the presence of testatrix and is therefore invalid. The authorities are in conflict as to facts necessary to constitute the attestation of a will in the presence of the testator. Different courts,

under substantially the same state of facts, reach different conclusions.

Courts adhering to the literal or strict construction rule generally hold that in order to constitute the attestation of a will in the presence of testator he must be able to see the instrument on the desk or table, to see the pen in the hand of witness, and to see and observe the movement of his hand and arm while in the act of signing his name. Courts adhering to the liberal construction or substantial compliance rule take the opposite view. They generally hold that if the attesting witnesses are in range of view of the testator and can or could have been plainly seen while in the act of signing their names and the body and person of witnesses could have been plainly seen while so doing, such facts are sufficient to sustain a finding that the will was attested in the presence of testator even though he might not at the time have been able to see the instrument on the desk or table at which the witness was seated nor to see the pen in his hand or to observe the motion of his hand and arm while in the act of subscribing his name thereto. In 68 C. J. 705, it is said:

"In numerous decisions it is held or stated without qualification that the testator must see or be able to see the witness in the act of subscribing the will, in order that he may satisfy himself by ocular demonstration that they are witnessing the very paper he designed to be his last will; and in applying this principle it was held that a will was not signed in the presence of the testator where the testator could have seen only the backs of the witnesses as they sat writing but could not have seen their faces, arms, or hands or the paper on which they wrote. On the other hand, it has been held that where the testator can see enough of the act of signing to know that the witnesses and the will are in his presence and that the former are signing their names as witnesses, the statutory requirement is sufficiently compiled with, although the bodies of the witnesses, when the signing is done,

are between the testator and the table, so that he cannot see the pen nor the letters traced by it, nor probably, the hand that held the pen. And a similar conclusion has been reached where it was held that if the witnesses were in the range of the testator's vision, the will will be considered as having been signed in his presence, although the testator could not see their forearms and writing hands, and the paper itself. It also has been held that the statutory requirement is sufficiently compiled with where the testator could see the motion of the pen on the paper, although he could not distinguish the letters the pen was forming."

The following are some of the cases adhering to the more liberal view and hold facts somewhat similar to the facts here involved sufficient to sustain a finding that the will was attested by the attesting witnesses in the presence of the testator. Nock v. Nock's Ex'rs, 10 Gratt. (Va.) 106; Cook v. Winchester, 81 Mich. 581, 46 N. W. 106; Cunningham v. Cunningham, 80 Minn. 180, 83 N. W. 58; Healey v. Bartlett, 73 N. H. 110, 59 A. 617; Raymond v. Wagner (Mass.) 59 N.E. 811; In re Cytacki's Estate, 293 Mich. 555, 292 N.W. 498.

In this state we have adopted the substantial compliance rule. Belmore v. Wiley, 189 Okla. 86, 113 P. 2d 817; In re Jones' Estate, 190 Okla. 123, 121 P. 2d 574. In harmony with this rule we hold the evidence in the instant case sufficient to sustain the finding that the witness Thompson subscribed his name to the will as such in the presence of testatrix.

It is further contended that the will is invalid for the reason that the attesting witnesses did not subscribe their names thereto in the presence of each other. We do not agree. The statute does not provide that the witnesses must sign their names to the will as such in the presence of each other. It simply provides:

"There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the

will at the testator's request and in his presence." 84 O.S. 1941 § 255.

In vol. 68 C. J. 706, it is said:

"It is not necessary that the attesting witnesses should subscribe their names in the presence of each other where the statute does not require it."

See, also, vol. 1, Page on Wills, sec. 361. It is there said:

"Unless the statute expressly requires it, the witnesses are not required to sign in the presence of each other, but may sign at different times and places."

See, also, annotation 99 A. L. R. 554. An examination of the authorities there appearing will disclose that the vast majority of courts of other states having a statute similar to ours hold that it is not essential to the validity of the will that the attesting witnesses subscribe their names thereto in the presence of each other.

Counsel for contestants rely on the case of Emart's Estate, 175 Cal. 238, 165 P. 707, wherein the Supreme Court of California, under a statute identical with ours, holds that where a will is executed in absence of attesting witnesses the testator must acknowledge to the witnesses, all being present at the same time, that he has executed the instrument and that the attesting witnesses to the will must attest the same in the presence of each other.

The court seems to have reached such conclusion on decisions based on statutes which expressly provide that if the will is executed in the absence of attesting witnesses testator must acknowledge to the witnesses, *"all being present at the same time,"* that he has executed the instrument, and construes the following language of its statute, *"or must be acknowledged by the testator to them,"* to mean the same thing. The opinion in the above case has been to some extent modified by later decisions. In re Dow, 181 Cal. 106, 183 P. 794, and In re Lawrence, 196 Cal. 321, 237 P. 738. In these cases it is held that it is not essential to the validity of the will that the attesting witnesses subscribe their names thereto in the presence of each other. The court, however, in these cases adheres to the rule that where the will is executed in the absence of attesting witnesses it is essential to the validity of the will that the testator acknowledge to the witnesses, all being present at the same time, that he has executed the instrument. Subsequent to the rendition of the above opinions California has amended its statute to expressly so provide.

The conclusion reached by the California courts in the above cases is contrary to the conclusion reached by the courts in other states having a similar statute. In vol. 69, C. J. 693, § 348, it is said:

"It has been held that publication may be made to the witnesses at different times and when they are apart from each other."

In the case of Grubbs et al. v. Marshall et al., 11 Ky. L. 870, 13 S. W. 447, it is said:

"Under Gen. St. Ky. c. 113, sec. 5, which provides that if a will is not 'wholly written by the testator the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses,' the witnesses need not be present together when the acknowledgment is made."

In that case the court further said:

"And as both of them testified the testator acknowledged the will, respectively, in their presence, we think the law was substantially complied with as to the manner of its execution; for it is not required, nor do we see why it should be treated as indispensable, for subscribing witnesses to be present at the same time and place when the will is acknowledged, if it be in fact done in presence of each of them. Maupin's Ex'r v. Wools, 1 Duv. 223."

In the case of Collins et al. v. Stroup et al., 71 N. D. 679, 3 N. W. 2d 742, the Supreme Court of North Dakota, under a statute indentical with ours, said:

"The term 'acknowledge' in the sense used here means 'owning the subscription as his'; admitting it is his, placed there freely and intentionally for a signature. It is also clear that Richey, at the time of subscribing and at the time of acknowledging, declared to the attesting witnesses that the instrument was his will; and further that the two attesting witnesses signed their names as witnesses at the end of the will, at the testator's request, and in the testator's presence, though not in the presence of each other.

"The law does not require that the signing by one witness be in the presence of the other witness; nor does this section require the testator to make his declaration to an attesting witness at the time the other witness is present. He may make this declaration to the witnesses individually."

The Supreme Court of Indiana, in the case of Johnson v. Johnson, 106 Ind. 475, 7 N. E. 201, reaches the same conclusion. See, also, Flinn v. Owen, 58 Ill. 111; Cravens v. Faulconer, 28 Mo. 19; Chase v. Kittredge, 11 Allen (Mass.) 79, 87 Am. Dec. 687.

In the minority opinion in the case of In re Emart's Estate, supra, it is said:

"It appears, therefore, that under both English statutes the provision that an act shall be done by two or more witnesses in the presence of the testator does not require that the witnesses do the act at the same time, or in the presence of each other. It is enough if each does the act and if the testator be present on each occasion. The same construction should, on like grounds, apply to a provision, like that of section 1276 of the Civil Code, that the testator perform some act, or make some declaration, 'in the presence of' or 'to' a given number of witnesses. The necessity for the joint presence of the witnesses during any part of the testamentary act exists only when the statute contains direct and explicit language to that effect, as the Wills Act does when it declares that the signature shall be made or acknowledged by the testator in the presence of two or more witnesses present at the same time.

"The American statutes governing the making of wills have uniformly been interpreted in accordance with these views. The legislation in the several states has varied greatly, some of the statutes being modeled on the statutes of frauds, others following the Wills Act, while some (like our own) embody certain features of each of the English Acts, or make additional provisions, like that of declaration that the paper is a will. Where the statute simply provides that a will must be in writing and attested by two or more witnesses subscribing their names thereto in the presence of the testator, or that the will shall be signed and acknowledged in the presence of two witnesses, who shall subscribe the will in the presence of the testator, *it has everywhere been held that the witnesses need not be together during the act of signing or acknowledgment on the part of the testator, or during their own attestation.*" (Emphasis added.)

Our independent investigation of the authorities convinces us that they support the above statement.

We therefore conclude that where testator has acknowledged the execution of a will, separately, to each attesting witness, it is not invalid for the reason that both witnesses were not together at the time the acknowledgment was made; nor is it essential to the validity of the will that the attesting witnesses attest the same in the presence of each other, for the simple reason that the statute does not so provide.

There is no substantial evidence to sustain contestants' allegation as to undue unfluence.

The judgment is affirmed.

GIBSON, C. J., HURST, V. C. J., and OSBORN, BAYLESS, WELCH, CORN, and DAVISON, JJ., concur. RILEY, J., dissents.

RILEY, J. (dissenting). A will has the effect of rendering inapplicable the laws of succession otherwise applicable to the estate of testator. In order

to divert devolution of property from the course ordinarily just, solemnity and technicality must attend the act of making a will. The statute requires attestation in the presence of testator. Herein Thompson, an attesting witness, took the instrument, designated a will, inside his filling station where he was alone and unaccompanied. He placed the instrument on a desk, sat down, and signed the instrument. The testatrix remained outside in the back seat of an automobile stopped in the nearest lane of traffic from where only the head and shoulders of the subscribing witness could have been visible to her. It was impossible for her to have seen the will or the act of attestation.

Under such circumstances it has been held that the witness did not subscribe to the will in testator's presence. Green v. Davis, 228 Ala. 162, 153 So. 240. The testator must have opportunity of seeing the very act of attestation. Walker v. Walker, 342 Ill. 376, 174 N. E. 541. A conclusion merely from the surrounding circumstances is not sufficient, idem, but it is essential to the attestation that the will and the witness be in testator's presence. Snyder v. Steele, 287 Ill. 159, 122 N. E. 520; Poindexter, Adm'r, v. Alexander, 277 Ky. 147, 125 S. W. 2d 981.

The formalities to be observed in the execution of wills are simple and calculated to prevent fraud and uncertainty. Compliance with statutory requirements in execution of a will is essential to the validity of the testament. An heir may not be deprived of an inheritance except in compliance with technical requirement of law; intention regarding disposition, short of execution, does not suffice. 28 R. C. L. 108 § 160; Hill v. Davis, 64 Okla. 253, 167 P. 465, L. R. A. 1918B, 687.

Belmore v. Wiley, 189 Okla. 86, 113 P. 2d 817, and In re Jones' Estate, 190 Okla. 123, 121 P. 2d 574, are relied upon in the mapority opinion and said to support the substantial compliance rule. The substantial compliance rule stated in these cases regarded testa-

tor's request to subscribing witnesses. In that regard, actions speak louder than words, but where execution in testator's presence is at issue, neither words nor intention suffice. The governing decision in this jurisdiction is In re Stover's Estate, 104 Okla. 251, 231 P. 212; the rule is that the burden of proof rests upon proponent of a will to establish that the will was executed according to the provisions of the statute. As in Hill v. Davis, supra, "To hold that requirement was complied with in this instance. . . would subvert the purpose and intent of the statute, and would amount to a disregard of its substance". Failure to halt here permits substantial compliance to run wild, so that if in any given instance the intention of the testator is ascertained, his will may be sustained. Application of the rule of substantial compliance to the actual execution of a will is to ignore the statute intended to prevent fraud.

I think the county court correct.