GOFF et al. v. KNIGHT.

No. 33353.    May 31, 1949.

*206 P. 2d 992.*

J. A. Shirley and Porter Newman, both of Durant, for plaintiffs in error.

A. H. Ferguson, of Russellville, Ark., and Ceph Shoemake, of Durant, for defendants in error.

CORN, J. Saphronia Knight, resident of Bryan county, Okla., died testate in September, 1920, possessed of an estate consisting of real property in that county. Surviving her were six children: Robert O. Knight, Shell Knight, Mrs. Callie Goff, Mrs. Ada Johnson, A. A. Knight, and Charley Knight. A. A. Knight, a widower without issue, died following his mother. Charley Knight was of feeble mind, and died in an institution in 1946. Shortly following his death Robert O. Knight presented the following will for probate, and asked for letters testamentary thereon:

"Last Will and Testament of Mrs. Saphronia Knight of Bennington, Okla.

"I, Saphronia Knight of Bryan County, Oklahoma, being now in sound mind and mental health but of feeble bodily health and desirous to make a final disposition of my property while in health do hereby make and publish this my last will and testament, hereby revoking any and all wills by me made.

"1. I direct the payment of all my just debts and funeral expenses.

"2. I give and devise to my sons and daughters, A. A. Knight, Robert O. Knight, Mrs. Callie Goff, Shelley Knight and Mrs. Ada Johnson each the sum of $5.00 out of any fund or sums of personal property owned by me at my deceased.

"3. I give, devise and bequeath to my son Charley Knight all the rest and residue of my estate, real personal and mixed to him held for the term of his natural life and no longer: That is, a life estate in all the residue of my property shall by this will pass to my son, Charley Knight, but no more.

"4. That after and upon the death of my son, Charley Knight, happening and occurring before the death of my son Robert Osco Knight, my estate shall pass and vest absolutely in the heirs of the body of Robert Osco Knight, my son.

"That my son Charley Knight is of feeble mind and is unable to care for himself and I desire that he have the use, profits and rents and benefits and proceeds of my estate so long as he shall live and that upon his death that the heirs of the body of Robert Osco Knight, however many and whomsoever they may be shall be the owners in fee simple of my estate except the five dollars apiece hereby granted to my other children.

"That should I die before the youngest child of Robert Osco Knight become of full age and he should be entitled to share in my estate while yet a minor, or any or all of said children or heirs of the body of Robert Osco Knight, I hereby request the court having jurisdiction of my estate to appoint Robert Osco Knight guardian of the heirs of his body and legatee hereunder and guardian of the person and estate of Charley Knight as soon as my property shall pass to him hereunder.

"I hereby appointed my son Robert Osco Knight sole executor without bond of this, my last will and testament."

(Page Two)

"Last Will and Testament of Mrs. Saphronia Knight of Bennington, Oklahoma

"In witness whereof, I, Mrs. Saphronia Knight have to this my last will and testament consisting of two sheets of paper subscribed my name this the 17th day of October, 1918.
          "Mrs. Saphronia Knight.

"Subscribed by Mrs. Saphronia Knight in the presence of each of us, the undersigned, and at the same time declared by her to be her last will and testament, and we, thereupon at the request of Mrs. Saphronia Knight in her presence and in the presence of each other signed our names hereto as witnesses this 17th day of October, 1918, at Bokchito, Bryan County, Oklahoma.
          "(Signed) H. N. Wilson
                    "S. W. Metcalf"

Petitioner's application alleged that testatrix died possessed of real property valued at $980; that the will gave $5 to each of testatrix's children and a life estate over to Charley Knight, and that upon his death all the property should vest in the heirs of Robert O. Knight; that petitioner's children were: Mrs. Ruth Lemm, Robert E. Knight, and Harry L. Knight; that under the will petitioner was entitled to letters testamentary and to serve without bond.

Shell Knight and Callie Goff, claiming as heirs at law of the testatrix, filed contest praying that probate be denied and setting up that testatrix was incompetent to execute a will because of illness and feeble-mindedness; the will was executed solely because of petitioner's influence over her; that the instrument was not a valid will and could not be proved as such, probate having been delayed until the witnesses were dead. Further, that petitioner had had charge of the estate for more than 25 years for the benefit of Charley Knight, and if required to account the estate would amount to more than $2,000, in which contestants were interested, since Charley Knight, their brother, died unmarried and without issue.

By proper order Harry L. Knight was made a party petitioner, and contestants' application for an accounting by Robert O. Knight was denied as prematurely brought, and also because he refused to qualify as executor. Thereafter upon hearing the county court found decedent was of sound mind at the time of execution of the will, and that same was executed as required by law. The will was ordered admitted to probate as a valid instrument passing testatrix's real and personal estate, and letters of executorship were issued to Harry L. Knight, who was nominated as executor by the other devisees named in the will, upon execution of proper bond. Contestants gave notice of appeal, and filed amendment to their answer, alleging the will was filed

in the office of the county judge immediately after execution and that the legatees and their father had notice thereof, and the will had laid dormant for 25 years and their rights thereunder were barred by the statute of limitations, and by laches and neglect, which made their claim a stale demand and so estopped them from asserting any rights under the will.

Upon trial in the district court Robert O. Knight, testifying for proponents, testified the testatrix's signature was that of his mother; that shortly after execution of the will, and at her request, he took same to the county judge's office and left it for safekeeping; that he did not know the contents of the will, but had heard his mother talk of making a will and leaving everything to his brother Charley; that after leaving the will for safekeeping he made no further inquiry concerning it until after Charley's death. He also testified his mother was capable of knowing what she was signing. Proponents also introduced rebuttal testimony as to testatrix's competency and ability to transact her own business affairs.

One Owensby, a bank employee at the time of execution of the will, testified he knew the signatures of the attesting witnesses, and that the signatures on the will were those of the parties whose names were signed thereto; that the witness Wilson had been dead for many years, and that he had neither seen the other witness, W. S. Metcalf, nor his signature, for many years. There was additional testimony, from Metcalf's brother, that he was living outside the state and his address was unknown, but that the signature of the attesting witness was that of his brother.

Contestants' motion to strike the testimony of witness Metcalf, because testimony of the subscribing witness could have been procured, was overruled, as was their objection to admissibility of the will and their motion to deny probate thereof. They then introduced

testimony that testatrix's mind was unsound prior to her death and at the time of execution of the will; and that she had received an injury which affected her mind. There was further testimony on these matters cumulative in nature. Numerous witnesses testified Charley's care was the principal thing upon her mind.

The trial court took the matter under advisement, and thereafter rendered judgment holding testatrix was possessed of testamentary capacity; that the will was executed in the form and manner prescribed by law and that the evidence established the signatures of the witnesses who attested the will, and that the will therefore was entitled to probate. The order of the probate was affirmed accordingly.

In appealing from the judgment affirming the order of the county court contestants first urge that the trial court erred in admitting the certificate of the attesting witnesses as proof of execution of the will, over contestants' objections.' Their argument in this respect is that the evidence showed testatrix did not request either of the witnesses to sign the will, and that she did not sign it in the presence of the witnesses.

They point out that the statutory requisites for execution of wills require the testator to sign at the end of the instrument in presence of the witnesses, declaring to them that such is testator's will, and thereafter the witnesses must sign the instrument at testator's request and in his presence. See 84 O.S. 1941 §55.

The testimony concerning the validity of the signatures of the witnesses to the will has been noted. It is true contestants objected to the testimony tending to establish the validity of the signatures. However, we are unable to follow the argument that this testimony shows the testatrix did not sign the instrument in their presence, and that she did not then request them to sign as subscribing witnesses.

58 O.S. 1941 §43 provides that in will contests, where the subscribing witnesses did not reside in the county and are not present to prove the will, or are insane or incompetent, upon such showing being made to the court, testimony of other witnesses may be had to prove the testator's execution of the will, and the court " . . . may admit proof of the handwriting of the testator, and of the subscribing witnesses, or any of them."

The general rule on this question is stated in ·68 C.J., Wills, section 749, as follows:

" . . . Where, however, in· proceedings for the probate of an instrument as a will, it appears to have been duly executed as such, and the attestation is established by proof of the handwriting of the witnesses or otherwise, although their testimony is not available, or they do not remember the transaction, it will. be presumed, in the absence of evidence to the contrary, that the will was executed in compliance with all the requirements of law, including those relating to publication, attestation in the presence of the testator, and the affixing of the testator's signature prior to those of the witnesses, and the performance by the witnesses of their duty to see that the instrument was signed and to satisfy themselves of the testator's competency, and hence the burden of adducing evidence to the contrary rests on one contesting or resisting the probate. This is especially true where the will contains a formal attestation clause, for such clause is presumptive evidence of the facts which it states. . . ."

To the same effect: 57 Am Jur., Wills, §866; 76 A.L.R. 617; Moore v. Glover, 196 Okla. 177, 163 P. 2d 1003; In re Wallace's Estate, 158 Kan. 633, 149 P. 2d 595.

The attestation clause recited that testatrix signed and acknowledged this will in the presence of the attesting witnesses, who then signed the will as witnesses, at her request. The absence of both of the witnesses was explained,

and evidence was offered establishing the authenticity of testatrix's signature, as well as those of the witnesses. Under these circumstances a prima facie case of execution of the will was made, and in the absence of any evidence sufficient to overcome the presumption thus created of execution of the will, the court properly admitted same to probate.

Contestants next urge error in admitting the will to probate because the evidence was insufficient to establish execution of same in compliance with the statutes. Supporting this contention they argue that the burden was upon proponents to establish that the will was executed in substantial compliance with the statutes. They cite McCarty et al. v. Weatherly, 85 Okla. 123, 204 P. 632, and In re Purcell's Estate, 198 Okla. 166, 176 P. 2d 986, and assert that the evidence was insufficient to discharge the burden cast upon proponents to show due execution of the will in compliance with statutory requirements.

Evidence concerning execution of the will has been noted. No testimony sufficient to controvert proponents' evidence was introduced to rebut the presumption of proper execution. The attestation clause recited observance of the statutes. Under the rule above set forth this created a presumption of due execution of the instrument. We have held that strict compliance with the statutory requirements is unnecessary. Moore et al. v. Glover, 196 Okla. 177, 163 P. 2d 1003; In re Estate of Tayrien, 117 Okla. 216, 246 P. 400; In re Ballard's Estate, 56 Okla. 149, 155 P. 894.

The last contention is that proponents were guilty of laches and so estopped to probate the will, because they had full knowledge that will was in existence, on file in the county judge's office, and that their claim under the will constituted a stale demand.

The evidence showed the legatees had no knowledge of the existence of a will. Robert O. Knight (the father) knew of its execution and that the property was to go to Charley Knight for his lifetime; but testified that Charley was living at home and he considered it unnecessary under the circumstances to probate the will, since Charley was receiving the benefits from the property.

There was no showing that the failure to offer the will for probate until after Charley Knight's death injured any of the parties. Certainly contestant's rights were not injured, since they could not have been in a more favorable position if the will had been probated immediately after testatrix's death. It was not shown that the legatees knew of the existence of the will, or that they were guilty of purposely not acting in the matter. Neither was it shown wherein the contestants were damaged by the failure to present the will for probate. We necessarily conclude that this argument is without substantial merit.

Judgment affirmed.

DAVISON, C.J., and GIBSON, LUTTRELL, HALLEY, JOHNSON, and O'-NEAL, JJ., concur.