IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 29, 2017 Session

## IN RE ESTATE OF CHARLES EDWARD FANT III

**Appeal from the Probate Court for Shelby County**
**No. PR005326    Karen D. Webster, Judge**

_____

**No. W2016-02498-COA-R3-CV**

_____

This is a will contest. The affidavit attached to the purported will was signed, in the presence of the testator, by two witnesses. At the hearing on the will contest, both witnesses and the notary public testified as to the validity of signatures on the purported will. The trial court held that the will and accompanying affidavit were not in strict compliance with the statute and denied admission of the will to probate. On appeal, the proponent of the purported will argues that the will satisfied the recent statutory requirements of Tennessee Code Annotated Section 32-1-104(b) such that the signatures of both witnesses were integrated into the will. Concluding that the witnesses' signatures were integrated into the will pursuant to Tennessee Code Annotated Section 32-1-104(b), and that the other statutory requirements were met, we reverse the trial court's ruling.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court
Reversed and Remanded.**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Blanchard E. Tual and Forest J. Dorkowski, Memphis, Tennessee, for the appellant, Luanne M. Fant.

Christina M. Burdette, Germantown, Tennessee, for the appellee, Michael B. Fant.

## OPINION

### I.    Background

In 2012, Charles Edward Fant, III ("Decedent") was diagnosed with esophageal cancer that quickly metastasized to his liver and bones. The Decedent was married to Luanne M. Fant ("Appellant"), his wife of 30 years. Decedent had one adult son, Michael B. Fant ("Appellee" or "Mr. Fant"). On March 21, 2013, Appellant drove Decedent to his office in order to execute his will. Attorney John Wilkinson drafted the will but was not present for its execution. Decedent asked Barbara Duncan and Emily Green, two of his long-time employees, to sign as witnesses to his will. Decedent asked Lisa Taylor, another long-time employee, to notarize the witnesses' signatures on the affidavit attached to his will. Decedent also declared the will to be his last will and testament. According to the testimony, after he signed the will, Decedent watched the two witnesses sign the affidavit to the will. The notary watched Decedent and the two witnesses sign the documents before affixing her seal to the affidavit. The two witnesses, the notary, and the Decedent were all in the same room when the will and affidavit were executed. Both witnesses and the notary testified that, at the time of the execution of the will, Decedent was of sound mind and disposing memory. The Decedent died on May 13, 2013.

On February 8, 2016, Mr. Fant filed a petition requesting that Mrs. Fant bring forward Decedent's last will and testament or, in the alternative, that Mr. Fant be appointed as administrator of Decedent's estate. On April 12, 2016, Mrs. Fant filed a counter-petition requesting that Decedent's will, dated March 21, 2013, be admitted to probate and that Mrs. Fant be appointed as executrix of Decedent's estate. Mr. Fant filed a response to Mrs. Fant's counter-petition denying that the purported will dated March 21, 2013 was Decedent's last will and testament. Mr. Fant argued that the purported will was not signed by witnesses because the signatures were on an otherwise blank piece of paper attached to a document titled "affidavit." Mr. Fant requested that the trial court dismiss Mrs. Fant's counter-petition and that Mr. Fant be appointed to administer Decedent's estate.

A hearing took place on June 21, 2016. Mrs. Fant put on proof as to the facts stated above. At the conclusion of Appellant's proof, Mr. Fant did not offer any proof or testimony. On November 14, 2016, the trial court entered an order denying Mrs. Fant's counter-petition to admit the Decedent's purported will to probate and ruled as follows:

1.    Decedent's purported last will and testament dated March 21, 2013 was not executed in strict compliance with TCA §32-1-104(a).
2.    TCA §32-1-104(b) does not operate to integrate the witnesses signatures under the affidavit attached to Decedent's purported will into the will.
3.    The purported will does not qualify as a validly executed testamentary instrument under TCA §32-1-104 capable and worthy of being admitted to probate.

- 2 -

***

5. That an Intestate Estate for Decedent, Charles Edward Fant, III, is hereby opened.

Mrs. Fant appeals.

## II. Issues

The Appellant raises nine issues in her brief. However, we perceive that there are four dispositive issues, which we state as follows:

1. Whether the trial court erred in ruling that the affidavit did not meet the requirements of Tenn. Code Ann. §32-2-110 because it did not include a statement that the decedent was of sound mind and disposing memory?

2. Whether the trial court erred in ruling that Tenn. Code Ann. §32-1-104(b) does not operate to integrate, into the purported will, the witnesses' signatures on the affidavit thus rendering the will invalid?

3. Whether the trial court erred in ruling that the Decedent did not sign the will in Barbara Duncan's presence?

4. Whether the trial court erred in its decision not to admit the Decedent's March 21, 2013 will to Probate?

## III. Standard of Review

The issues in this appeal involve statutory interpretation. Statutory interpretation is a question of law, which we review de novo, affording no presumption of correctness to the conclusions of the trial court. *State v. Crank*, 468 S.W.3d 15, 21 (Tenn. 2015); *In re Baby,* 447 S.W.3d 807, 817 (Tenn. 2014); *Mansell v. Bridgestone Firestone N. Am. Tire, LLC,* 417 S.W.3d 393, 399 (Tenn. 2013) (citing *Waters v. Farr,* 291 S.W.3d 873, 882 (Tenn. 2009)).

The principles of statutory interpretation are well established. When reading "statutory language that is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application." *Eastman Chemical Co. v. Johnson,* 151 S.W.3d 503, 507 (Tenn.

2004). "[W]e presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing." **SunTrust Bank v. Burke**, 491 S.W.3d 693, 695 (Tenn. Ct. App. 2015), *perm. app. denied* (Tenn. June 15, 2015) (quoting **Lind v. Beaman Dodge**, 356 S.W.3d 889, 895 (Tenn. 2011)). "When a statute is clear, we apply the plain meaning without complicating the task." **In re Baby**, 447 S.W.3d 807, 817 (Tenn. 2014). However, when a statute is ambiguous, "we may reference the broader statutory scheme, the history of the legislation, or other sources." **Colonial Pipeline Co. v. Morgan**, 263 S.W.3d 827, 836 (Tenn. 2008). Our duty in construing statutes is to ascertain and give effect to the intention and purpose of the legislature. *See* **Lipscomb v. Doe**, 32 S.W.3d 840, 844 (Tenn. 2000). To the extent that these issues involve questions of fact, our review of the trial court's ruling is *de novo* with a presumption of correctness. Tenn. R. App. P. 13. Accordingly, we may not reverse these findings unless they are contrary to the preponderance of the evidence. **Armbrister v. Armbrister**, 414 S.W.3d 685, 692 (Tenn. 2013).

## IV. Analysis

### A. Testator's Capacity

Tennessee Code Annotated Section 32-1-104(a) reads as follows:

(a)    The execution of a will, other than a holographic or nuncupative will, must be by the signature of the testator and of at least two (2) witnesses as follows:
(1) The testator shall signify to the attesting witnesses that the instrument is the testator's will and either:
       (A) The testator sign;
       (B) Acknowledge the testator's signature already made; or
       (C) At the testator's direction and in the testator's presence have someone else sign the testator's name; and
       (D) In any of the above cases the act must be done in the presence of two (2) or more attesting witnesses.
(2) The attesting witnesses must sign:
       (A) In the presence of the testator; and
       (B) In the presence of each other.

Tenn. Code Ann. §32-1-104(a). The trial court determined that the purported will ended on page six and the signatures of the two witnesses were part of a self-proving affidavit that began on page seven. Consequently, the trial court held that the witnesses signatures were not part of the will and that "Decedent's purported will was not executed in strict compliance with [Tennessee Code Annotated Section] 32-1-104(a)." This portion of the trial court's ruling is in accordance with **In re Estate of Morris**, No. M2014-00874-COA-R3-CV, 2015 WL 557970, at *4 (Tenn. Ct. App. Feb. 9, 2015), *perm. app. denied* (June

15, 2015), in which we held that the witnesses' signatures, on the affidavit, where the witnesses did not sign the actual will, do not satisfy the statutory formalities for executing a will in this state. ***Id.***

However, in 2016, the Legislature added subsection (b) to Section 36-1-104 in order to allow the integration of the affidavit (and the witnesses' signatures thereon) into the will such that an otherwise validly executed will may be entered into probate. The new section of the statute reads as follows:

> (b) (1) For wills executed prior to July 1, 2016, to the extent necessary for the will to be validly executed, witness signatures affixed to an affidavit meeting the requirements of § 32-2-110 shall be considered signatures to the will, provided that:
> (A) The signatures are made at the same time as the testator signs the will and are made in accordance with subsection (a); and
> (B) The affidavit contains language meeting all the requirements of subsection (a).
> (2) If the witnesses signed the affidavit on the same day that the testator signed the will, it shall be presumed that the witnesses and the testator signed at the same time, unless rebutted by clear and convincing evidence. If, pursuant to this subsection (b), witness signatures on the affidavit are treated as signatures on the will, the affidavit shall not also serve as a self-proving affidavit under § 32-2-110. Nothing in this subsection (b) shall affect, eliminate, or relax the requirement in subsection (a) that the testator sign the will.

Tenn. Code Ann. §32-1-104(b).

In order to determine whether the witnesses' signatures on the self-proving affidavit should be integrated as signatures to the will, the trial court considered whether the affidavit complied with the requirements of Tennessee Code Annotated section 32-2-110, which reads in pertinent part:

> Any or all of the attesting witnesses to any will may, at the request of the testator or, after the testator's death, at the request of the executor or any person interested under the will, make and sign an affidavit before any officer authorized to administer oaths in or out of this state, stating the facts to which they would be required to testify in court to prove the will, which affidavit shall be written on the will or, if that is impracticable, on some paper attached to the will, and the sworn statement of any such witness so taken shall be accepted by the court of probate when the will is not contested as if it had been taken before the court.

Tenn. Code Ann. § 32-2-110. Ultimately, the trial court held that Tennessee Code Annotated Section 32-1-104(b) does not operate to integrate the witnesses' signatures into the will because the affidavit is silent as to Decedent's capacity to execute the will. The language of Tennessee Code Annotated Section 32-2-110 does not require the accompanying affidavit to contain a statement concerning the testator's capacity. In fact, in its ruling, the trial court stated that there was no statutory requirement mandating the recitation of the testator's capacity in the affidavit. Additionally, the trial court explicitly referenced the notes to Tennessee Code Annotated Section 32-4-105 regarding the proof of wills stating that capacity is presumed unless there are suspicious circumstances. This principle of law is not a new concept:

> [T]he law presumes that every man is sane until the contrary is shown. . . . And this presumption will stand until some evidence is introduced to remove it. If a presumption may be removed, and must be by evidence adduced by the party alleging insanity. We are of opinion, therefore, that in the examination of the attesting witnesses, in the first instance, as to the formal execution of the will (there being no circumstances of suspicion surrounding it), it is not necessary to interrogate them as to the sanity of the testator. . . . The law presuming that every man is sane until the contrary is shown, the burden of proving the unsoundness of mind in the testator is on the party impeaching the will for this cause.

***Bartee v. Thompson***, 67 Tenn. 508, 511, 1875 WL 4645, at *1 (1875) (internal citations omitted). In this case, Mr. Fant never questioned Decedent's capacity, and no proof was presented that Decedent lacked capacity at the time he signed the purported will. Mr. Fant's petition simply alleges that the purported will "fails to meet the strict statutory requirements necessary to execute a will pursuant to [Tennessee Code Annotated Section] 32-1-104." The record contains no legal basis to support Mr. Fant's theory that the affidavit must contain a statement regarding Decedent's capacity. Instead, Mr. Fant cites the sample form from Pritchard on the Law of Wills and Administration of Estates as the basis for his argument that the affidavit must contain a statement regarding Decedent's capacity.

The statute, i.e., Tennessee Code Annotated Section 32-1-104(b), however, specifically prohibits affidavits, which are integrated into the will, from being used as self-proving affidavits. Here, three witnesses, all of whom were long-time employees of Decedent, testified that Decedent was of "sound mind and disposing memory" when he executed the purported will. Accordingly, we conclude that Tennessee Code Annotated Section 32-1-104(b) operates to integrate the witnesses' signatures into the will even though the affidavit is silent as to Decedent's capacity to execute the will.

### B.  Presence Defined

The trial court also determined that the purported will was not proven because Decedent did not sign his will in the "presence" of Ms. Duncan. In its ruling, the trial court cites Ms. Duncan's testimony, in which Ms. Duncan testified as follows:

> I was at my desk, I wasn't standing over there actually seeing him make his signature. But I saw them over there notarizing the will and him over there signing. But I – No, I was not actually over there at the desk, no. I was at my desk when I was witnessing it.

The trial court found that it was "questionable if Decedent signed the purported will in [Ms. Duncan's] presence as required under Tenn. Code Ann. §32-1-104(a)." The ruling goes on to state that:

> [D]ue to Barbara Duncan's position of approximately eleven to twelve feet away from the desk where the Decedent executed his will and due to the fact that all desks in the room were partitioned by a small wall; the Decedent did not sign his will in her presence, as she could not see him place his signature. Thus, this Court finds that the purported will was not proven in Court.

As set out above, Tennessee Code Annotated Section 32-1-104(a) specifies three scenarios by which a witness may acknowledge a will: (1) The testator may sign the will; (2) The testator may acknowledge his signature already made; or (3) the testator may have someone else sign the testator's name. Any of these three options must be completed in the presence of two or more attesting witnesses. Because a testator may acknowledge a signature already made, there is no requirement that the witnesses actually see the testator make his signature on the will. In *In re Estate of Ross*, 969 S.W.2d 398, 401 (Tenn. Ct. App. 1997), this Court explained:

> This jurisdiction has no case directly addressing the elements necessary for the testator and witnesses to be in each others "presence." This term is generally construed according to the circumstances of each case. 79 AmJur2d, Wills, § 321 (1975). Emphasis is placed on the ability of the testator to actually see or be able to see the witnesses if he/she wished. *Id*.; *Stanley v. Kelley*, 267 Ala. 379, 102 So.2d 16, 18 (1958) ("[it] is not necessary to prove that testator actually saw the witnesses sign their names to the will. It is sufficient if, from their relative positions, he could see them."); *Moore v. Glover*, 196 Okla. 177, 163 P.2d 1003, 1006 (1945) (witness and testator sufficiently in each others' presence where testator waited outside in the car while witness signed at desk inside building; testator could see witness through large glass window). An attestation in the same room or close vicinity with the testator is generally considered to be in his/her presence, unless there is a physical obstacle blocking the view.

*Id*. at § 322; ***In re Estate of Holden***, 261 Minn. 527, 113 N.W.2d 87, 92 (1962); ***Estate of Politowicz***, 124 N.J. Super. 9, 304 A.2d 569 (1973). These authorities reveal that relatively short distances, such as across the bank lobby, may not necessarily prevent the testator and witnesses from being in each others' presence.

***In re Estate of Ross***, 969 S.W.2d 398, 401 (Tenn. Ct. App. 1997). In ***Ross***, the witness knew the testator and saw him enter the bank and conduct business with another employee. Although the witness testified that she did not know testator was signing a will, when she signed as a witness, she recognized testator's signature and was expressly told it was testator's will. *Id.* This scenario clearly satisfies Tennessee Code Annotated Section 32-1-104(a)(1)(B) and (D). The instant case is similar to ***Ross***. During the hearing, Ms. Duncan was asked the following questions and gave the following responses:

Q. How long have you worked [in Decedent's office]?
A. Twenty -- 25, 26 years

***

Q. Did you know what you were signing?
A. Yes. Uh-huh.
Q. So he must have said something to you. What did he say?
A. That – I mean, I was at my desk and he, when he signed it, he wanted me to witness it. They called me over to sign it.
Q. Did you actually see Mr. Fant sign the will?
A. I saw him standing at the desk, signing it. But, like I said, I was at my desk working and they were at Lisa's desk, which is probably 11, 12 feet from mine.
Q. So until you were called over, you weren't really paying attention?
A. I was working and I was looking over there and we were saying things back and forth. And I heard what they were talking about, I knew what they were doing. I knew why they were at the office that day.

As in ***In re Estate of Ross***, Ms. Duncan testified that she knew the Decedent, and could see and hear the Decedent. Even if she could not see Decedent actually place his signature on the will, at the time she signed as a witness, Ms. Duncan recognized Decedent's signature and knew that she was witnessing Decedent's will. The trial court's holding that, to validly witness the will, Ms. Duncan was required to actually see Decedent make his signature, is, respectfully, not the law. The argument that Decedent did not sign the will in the presence of Ms. Duncan because she could not see him place his signature is not dispositive because the statute does not require it. As set out above, Tennessee Code Annotated Section 32-1-104(a) explicitly provides that the testator may acknowledge a signature already made. Here, there is no question that Decedent

- 8 -

acknowledged his signature on his will when he asked Ms. Duncan to step across the room to witness it. Courts endeavor to effectuate a testator's intent "unless prohibited by a rule of law or public policy," *In re Estate of McFarland*, 167 S.W.3d 299, 302 (Tenn. 2005), and courts will sustain a will as legally executed if it can be done consistently with statutory requirements, *Leathers v. Binkley*, 264 S.W.2d 561, 563 (Tenn. 1954). Accordingly, we conclude that Decedent's purported last will and testament dated March 21, 2013 qualifies as a validly executed testamentary instrument under Tennessee Code Annotated Section 32-1-104 and should be admitted to probate.

## V. Conclusion

For the foregoing reasons, we reverse the trial court's order and remand for further proceedings as may be necessary and are consistent with this opinion, including, but not limited to, admitting Decedent's will to probate. Costs of the appeal are assessed against Appellee, Michael B. Fant, for all of which execution may issue if necessary.

_____

KENNY ARMSTRONG, JUDGE